Present: Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and
Russell, S.J.

JOSEPH LEATH ANTHONY                        OPINION BY
                                   SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 050948                    November 4, 2005

VIRGINIA STATE BAR, ex rel.
NINTH DISTRICT COMMITTEE


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Marc Jacobson, Robert M.D. Turk, and Herman A. Whisenant, Jr.,
Judges Designate


This is an appeal of right from the decision of a three-judge court imposing a public reprimand upon an attorney for professional misconduct.

*Proceedings*

Joseph Leath Anthony is an attorney licensed to practice law in Virginia. In January 2004, the Virginia State Bar filed a complaint against him alleging professional misconduct. Anthony demanded trial by a three-judge court and the Chief Justice of this Court entered an order appointing a three-judge panel to hear the case, pursuant to Code § 54.1-3935. The trial court heard the evidence and arguments of counsel on November 30, 2004, and found Anthony guilty of violating Rule 8.2 of the Virginia Rules of Professional Conduct, which provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or

integrity of a judge or other judicial officer."  The court imposed a public reprimand with terms.[1]

## *Facts[2]*

Anthony was found in violation of Rule 8.2, which became effective on January 1, 2000, when the present Rules of Professional Conduct replaced the former Code of Professional Responsibility.  Accordingly, the evidence supporting the trial court's decision necessarily relates to Anthony's conduct after that date.  Because that evidence consists chiefly of post-2000 reiterations and republications by Anthony of statements he made in the 1990's, we must necessarily examine his earlier conduct.

In 1994 and 1995, an appeal of a legal malpractice case was pending in this Court styled Snyder-Falkinham v. Stockburger (the Stockburger case).  Although Anthony was not counsel of record in that case, he represented one of the parties in other matters.  He testified that he received a telephone call from an unidentified person who spoke in a "distortion of voice or a whisper" and that the anonymous

---

[1] The terms imposed were as follows: "1) Respondent shall not file any action in any court, state or federal, without first associating co-counsel experienced in litigation; and 2) Respondent shall abstain from contacting any judge by letter in any proceeding in which he is involved as counsel."

caller, whom he called "Deep Throat," told him that there had been ex parte communication between parties in the Stockburger case and Justices of this Court. "Deep Throat" said that the improper communication had consisted of an anonymous letter, signed only "A Grateful Wife," mailed to the Justices during pendency of the Stockburger appeal.

Anthony wrote to the clerk of this Court on November 7, 1994 and again on May 1, 1995, stating that he had information that an ex parte communication had been sent to this Court and, in the second letter, requesting that "the ex parte communications, if any, be disclosed." There followed four more letters from Anthony to the clerk's office, seeking production of the "Grateful Wife" letter. Anthony then sent a series of five additional letters to the same effect, addressed to then Chief Justice Harry L. Carrico, in which he said that the letter he sought had been dated September 5, 1994. In one of Anthony's letters, dated July 13, 1995, Anthony stated, "it is logical to assume that the non-response from any Justice is a combined decision by all of the Justices, indicating an extreme desire/need to protect some

---

[2] Although the record is voluminous, Anthony concedes on appeal that "[t]here is little, if any, contest concerning the facts themselves."

3

group and/or person."[3]  Anthony ultimately sent a copy of the

"Grateful Wife" letter to the Court.  He testified that he had

not seen it until he had appealed to "Deep Throat" to produce

it and that thereafter his client had found a copy taped to

her door.

Anthony thereafter, as counsel for the plaintiff in the

Stockburger case, signed and filed a complaint in the United

States District Court for the Western District of Virginia

against the party and lawyers who had opposed his client in

the Stockburger case, alleging civil rights and state law

violations.  In the complaint, Anthony alleged that there was

a "conspiracy" between the Justices of this Court and the

Stockburger case defendants to deny his client her civil

rights and that the Justices had "corruptly" denied a petition

for rehearing in that case.

---

[3] David B. Beach, then Clerk of this Court, replied to
Anthony on July 26, 1995:  "I am instructed to advise you that
the members of the Court have a vague recollection of
receiving what may have been a copy of the letter dated
September 5, 1994, to which you refer.  Some remember reading
only a part of the letter, others remember reading it through.
As the members recall, the letter was anonymous, and some who
read it deemed it incomprehensible.  No member gave it any
consideration, and it had no influence upon the subsequent
decision of any member of the Court in your client's appeal.
Instead, the members threw their copies in the waste basket,
deeming it to be another unsolicited writing often sent to the
Justices by litigants, convicts, and others who are either
pleased or displeased with a decision of the Court."

4

The defendants filed a motion to dismiss. United States District Judge Samuel Wilson heard the motion and, in a memorandum opinion, commented that "[t]he action is based on an alleged anonymous tip and has all the grace and charm of a drive-by shooting." The court dismissed the complaint and pursuant to Rule 11, Federal Rules of Civil Procedure, ordered sanctions against Anthony, his client, and Michael A. Richardson, a Tennessee lawyer who had also signed the complaint. The court continued the case for hearing on the quantum of sanctions to be imposed.

Anthony responded by filing a 16-page "Protective Motion To Reconsider, Rehear, Vacate, Amend, Certify, Extend, And/Or Stay" in which he accused Judge Wilson of displaying an "aggressive, hostile attitude" toward him and "unprofessionally" attacking him. After this, Judge Wilson entered an order transferring the case to United States District Judge William L. Osteen, Sr. of the Middle District of North Carolina, who was designated to hold court in the Western District of Virginia.

Judge Osteen conducted a sanctions hearing on September 23, 1996, at which Anthony and his co-counsel testified that the sole basis of their federal complaint had been the anonymous "Grateful Wife" letter and telephone calls from the anonymous "Deep Throat." For reasons not revealed in the

record, Judge Osteen did not enter an order disposing of the case until June 7, 2002, when he held that the "harsh and incredible allegations are unsupported by even a scintilla of competent evidence."  Judge Osteen's order made findings that Anthony and Richardson had made unfounded attacks upon the Virginia trial judge in the Stockburger case, the Justices of this Court and Judge Wilson.  He concluded that "[s]uch conduct is abhorrent to our system of justice and cannot be tolerated."  Judge Osteen noted that Richardson had no prior record of discipline, while Anthony had on two prior occasions accused two judges, one state and one federal, of bias and inability to understand decisions.  Anthony had also been found in direct violation of a court order in the Western District of Virginia in another case, under which he was prohibited from filing motions.  Ultimately, the court imposed sanctions upon Richardson of $7,500 and upon Anthony of $14,000.

Anthony's journey had only begun.  He filed a "Motion to Supplement the Record" in the federal district court in which he made various charges against Judge Osteen.  Anthony then appealed the dismissal of his federal case to the United States Court of Appeals for the Fourth Circuit, where, in 2002, he filed a "Docketing Statement" in which he said that Judge Wilson "had not 'one scintilla of evidence' – (credible,

6

competent, admissible, or otherwise) to support this libelous, harsh and incredible legal finding of fact." He also accused Judge Osteen of making false accusations against him which, if not contained in an order, "would be libelous." Anthony renewed his charges against the members of this Court. Referring to the "Grateful Wife" letter, Anthony wrote: "The letter is credible, not due to who did or did not author it and competent because it was clandestinely received by all of the justices who wrongfully decided to treat it as confidential when it was not, presumably to keep from having to file it in the record. . . ." Anthony's "Docketing Statement" also referred to "the fact that the Supreme Court of Virginia had received, had concealed, had mischaracterized and had destroyed the eight originals of the Grateful Wife's Letter, which likely contained, inter alia, the DNA of the author. . . ."

Anthony's appeal to the Fourth Circuit was unsuccessful. He then wrote a letter, dated February 18, 2003, to Chief Judge William W. Wilkins of the Fourth Circuit, accusing federal judges of placing "false and defamatory information into public records, – apparently to cover up the documented wrongful judicial conduct of state court judges and/or to punish and defame the individuals who dared to question that state judicial conduct. Each of these Judges

7

manufactured/fabricated evidence. . . ."  In his letter to Judge Wilkins, Anthony also accused the judges of the Fourth Circuit of "corruptly" entering orders "because the Fourth Circuit judges knowingly allowed false and defamatory information to remain in public records. . . ."

On April 25, 2003, Anthony filed a petition for a writ of certiorari in the Supreme Court of the United States.  In his petition, he wrote:  "This case presents a situation in which the lower courts were unable to police themselves to avoid misuse of judicial power."  He further wrote that an "investigation" had "revealed that the justices of the Virginia Supreme Court had received ex parte communication, concealed it, wrongfully declared it confidential, mischaracterized it and ultimately destroyed it after a copy was requested."

Anthony's petition for certiorari was denied.  He then filed a petition for rehearing in which he referred to "material judicial misconduct," "major fabrications of evidence by the Federal District Court," "obvious creation/manufacturing of evidence by judges," a "determination that was made on a fraudulent basis," a "corruption of the judicial process" and "a complete abdication of judicial integrity."  Anthony's petition for rehearing was denied.

At Anthony's hearing before the three-judge court, he admitted making all of the previous statements, but stated that he was exercising his "First Amendment rights" in making them.  At many points in the proceedings, Anthony was asked what factual basis he had for his statements.  His replies were either "the underlying record" or references to his anonymous telephone calls from "Deep Throat" and the anonymous "Grateful Wife" letter.  Anthony offered no other justification for the numerous attacks he had made upon the qualifications and integrity of the several judges, state and federal, maligned by his statements.

*Discussion*

At the hearing before the three-judge court, Anthony made numerous jurisdictional objections and filed a plea in bar, a motion to dismiss, a motion for the production of exculpatory evidence, and a motion to strike the Bar's evidence.  The trial court overruled or denied all of the foregoing. Anthony, on appeal, assigns error to each of those rulings. We find no merit in any of Anthony's assignments of error, only two of which require discussion.

*A. The Legal Standard*

Anthony argued at his hearing and on appeal that the Bar, in order to establish a violation of Rule 8.2, had the burden of proving that his various statements concerning judges were

9

in fact false.  That contention ignores the simple language of the rule.  We held, in Pilli v. Virginia State Bar, 269 Va. 391, 611 S.E.2d 389 (2005), that the Bar has the burden of establishing two elements to prove a violation of Rule 8.2: "First, the Bar must establish that a lawyer made a statement about a judge or other judicial officer involving his or her qualifications or integrity.  Second, the Bar must prove that the statement was made with reckless disregard of its truth or falsity or with knowledge that the statement was false."  Id., at 396, 611 S.E.2d at 391.

The standard of review we apply to the decision of a three-judge court in a Bar disciplinary proceeding is the same as the standard applicable to decisions of the Disciplinary Board.  We conduct an independent examination of the entire record.  We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party in the trial court.  We accord the trial court's factual findings substantial weight and view those findings as prima facie correct.  Although we do not give the trial court's conclusions the weight of a jury verdict, we will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law.  See Pilli, 269 Va. at 396, 611 S.E.2d at 391.

Applying the standard set forth in Pilli, the trial court found, by clear and convincing evidence, indeed by unrefuted evidence, that Anthony had made statements about a number of judges involving their qualifications and integrity and that he made those statements with reckless disregard of their truth or falsity.  Anthony's explanation that his statements impugning the integrity of various judges were based only upon anonymous telephone calls, an anonymous letter, and "the underlying record," were in themselves sufficient to support the trial court's conclusion that those statements were made with reckless disregard of their truth or falsity.  Our independent review of the record supports the trial court's findings.

*B. Freedom of Speech*

Finally, Anthony argues that even if his statements violated Rule 8.2, they fall within the category of speech protected by the First Amendment to the Constitution of the United States and Article I, Section 12, of the Constitution of Virginia.  Anthony cites criminal and criminal contempt cases, and cases involving statements published by news media, to support his arguments.  He argues that state law may not regulate speech unless it is shown that the speech constitutes a "clear and present danger" of causing substantive evils that the state has a right to prevent.

11

We do not agree.  The Supreme Court of the United States has made it clear that the speech of lawyers in pending cases may be regulated under a less demanding standard than the "clear and present danger" standard established for the regulation of the press.  A lawyer's right to free speech is "extremely circumscribed" in the courtroom and, in a pending case, is limited outside the courtroom as well, to a degree that would not apply to an ordinary citizen.  Gentile v. State Bar of Nevada, 501 U.S. 1030, 1071 (1991).  Those limitations on lawyers' rights of free speech are based upon a lawyer's obligation to abstain from public debate that will obstruct the administration of justice.  Id. at 1074.  Because lawyers have special access to information within the judicial system, their statements may pose a threat to the fairness of a pending proceeding, such statements being likely perceived as especially authoritative.  Id.

An appropriate test for balancing a lawyer's free speech rights against the restrictions imposed by the Rules of Professional Conduct is:  Whether the conduct in question creates a "substantial likelihood of material prejudice" to the administration of justice.  Gentile, 501 U.S. at 1074-75.  That is the test we adopted in Pilli, where we said:  "Finally, we observe that these written statements by a member of the bar of this Commonwealth, published in the form of a

"pleading" filed with a court, are more than a troubling reflection of the author's lack of professionalism.  Such statements also may have the undeserved effect of diminishing the public's perception of the numerous lawyers and judges who so ably serve the citizens of this Commonwealth."  269 Va. at 397, 611 S.E.2d at 392.[4]

Judges are no more immune from criticism in the public forum than are any other public office-holders, although their ability to reply to it is extremely limited.  A judge's errors are subject to correction on appeal, and judicial misconduct is subject to discipline by independent bodies created by statute.  Judges are subject to removal or impeachment for wrongdoing pursuant to constitutional provisions, and they are responsible for violations of the law as are all other citizens.  The judicial branch of government, however, is uniquely dependent upon the trust of the people for the effective performance of its work.  It commands no armies and does not control the public purse.  It is especially

---

[4] The Supreme Court, in Gentile, 501 U.S. at 1068, observed that Virginia had adopted the "clear and present danger" standard in these circumstances.  That was true in 1991, when Gentile was decided, because former Disciplinary Rule 7-106, then in effect, expressly adopted that standard.  Present Rule 8.2 is silent as to the balancing test to be applied.  Its companion Rule 3.6, however, relating to trial publicity, expresses a standard parallel to that which we apply here:  "a substantial likelihood of interfering with the fairness of the trial."

vulnerable to unfounded attacks that undermine public confidence in its integrity.  Reckless attacks by lawyers are especially damaging, for the reasons discussed above.

We hold that a derogatory statement concerning the qualifications or integrity of a judge, made by a lawyer with knowing falsity or with reckless disregard of its truth or falsity, tends to diminish the public perception of the qualifications or integrity of the judge.  Such a statement creates a substantial likelihood of material prejudice to the administration of justice as a matter of law and is not, therefore, constitutionally protected speech.

## *Conclusion*

Because the record supports the finding of the three-judge court that Anthony's statements violated Rule 8.2, and because his statements lacked constitutional protection, we will affirm that court's order.

Affirmed.