2009 WY 48

**BOARD OF PROFESSIONAL RE-SPONSIBILITY, WYOMING STATE BAR, Petitioner,**

v.

**Sue DAVIDSON, Respondent.**

**No. D–08–0003.**

Supreme Court of Wyoming.

April 7, 2009.

## ORDER SUSPENDING ATTORNEY FROM PRACTICE OF LAW AND ASSESSING COSTS

BARTON R. VOIGT, Chief Justice.

[¶ 1]   This matter comes before the Court upon a Report and Recommendation for Discipline filed on September 19, 2008, by the Board of Professional Responsibility of the Wyoming State Bar (the Board).   Having duly considered that Report and Recommendation, having reviewed the Board's record and the transcript of the hearing before the Board, having read the parties' briefs and heard oral argument, and being fully informed in the premises, the Court finds and concludes as set forth below.

### FACTS

[¶ 2]   This is an attorney discipline case that arose out of three separate formal charges brought against Respondent by Petitioner.   We will only briefly outline two of those charges, and their status to date, inasmuch as they do not remain contested.   We will discuss the third matter in detail.

[¶ 3]   In its first charge, Petitioner alleged that Respondent had violated Rule 4.2 of the Wyoming Rules of Professional Conduct for Attorneys at Law by communicating directly with a person she knew to be represented by counsel.[1]   Because of disputed facts, the

---

1.   Rule 4.2 reads as follows:

In representing a client, a lawyer shall not communicate about the subject of the repre-

Board found that Petitioner had failed to prove this charge by clear and convincing evidence. This charge, therefore, is not now before the Court.

[¶ 4] In its second charge, Petitioner alleged that Respondent had violated Rule 1.3 of the Wyoming Rules of Professional Conduct for Attorneys at Law by failing timely to file a client's pleading in a domestic relations case.[2] During her testimony before the Board, Respondent admitted this rule violation. Consequently, this violation contributed to the Board's sanction recommendation, which is now before the Court.

[¶ 5] We have concluded that the simplest way to present the somewhat complicated facts of the third formal charge is to set forth verbatim several paragraphs from the Board's Report and Recommendation:

11. In the fall of 2007, Respondent was representing a client petitioner in regard to a confidential domestic proceeding. The matter was filed in the First Judicial District, Laramie County, Wyoming, and had been assigned to Judge Peter Arnold. (Trans. p. 142.) Based on a standing order, the matter was then given to Circuit Judge Tom Campbell. (Trans. p. 42.) A subsequent motion for protective order between the same two parties was filed in circuit court so that it was handled by Judge Campbell. (Trans. p. 42.)

12. The protective order petition was heard by Judge Campbell on October 3, 2007. (Trans. p. 43.) The following day, opposing counsel filed a Motion for Reassignment of Judge, asking that the domestic matter be sent back to Judge Arnold. (Trans. p. 43.) On October 8, 2007, Judge Campbell signed an Order Reassigning Judge, and the order reassigning Judge Arnold to the case was filed on October 9. (Trans. p. 129, Exh 12.) Respondent, on behalf of the petitioner client, also filed a Resistance and Objection to Motion for Reassignment of Judge on the same day the Order Reassigning Judge was filed. (Trans. p. 128, Exh 12.) An order setting a hearing in the matter on November 6, 2007 was also entered by Judge Arnold on October 9. (Exh 12.)

13. After learning that the case had been reassigned to Judge Arnold, Respondent's petitioner client told Respondent to "do what you have to do" because she did not want Judge Arnold as her judge. (Trans. p. 118.)

14. Thereafter, Respondent prepared Petitioner's Motion for Reassignment of Judge and [Motion to] Vacate Trial Date. (Exh 12.) In the Motion, Respondent alleged that opposing counsel and Judge Arnold had engaged in an improper *ex parte* communication in order to set the trial in the matter. Respondent further alleged that Judge Arnold was "rumored" to afford favoritism to members of opposing counsel's firm, and that such "favoritism was at play" in connection with Judge Arnold's reassignment and trial setting.

15. Prior to filing the Motion on October 23, 2007, Respondent discussed with her client petitioner that if she filed the pleading with those particular accusations, it was going to be pretty clear that Judge Arnold would take himself off the case due to the nature of the allegations against him. (Trans. pp. 120–21.)

16. On November 1, 2007, Judge Arnold conducted a "status hearing" where Respondent appeared together with opposing counsel and their respective clients. (Exh 20.) Respondent was represented by [counsel] at the hearing. During the hearing, Judge Arnold asked [R]espondent what investigation she did, pursuant to Rule 11 of the Wyoming Rules of Civil Procedure, prior to filing the Motion which accused Judge Arnold and opposing counsel of ethical misconduct.[3] Respondent

---

sentation with a person or entity the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

**2.** Rule 1.3 reads as follows:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**3.** W.R.C.P. 11(b) reads as follows:
(b) *Representations to court.*—By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrep-

refused to answer the question. Thereafter, when asked specific questions by Judge Arnold as to what she did to verify the allegations in the subject Motion, Respondent repeatedly refused to answer any of them.

17. Judge Arnold subsequently recused himself from the matter, and it was again reassigned, this time to District Court Judge Edward Grant. (Trans. p. 116.) However, Judge Arnold did file a complaint with the Wyoming State Bar in connection with Respondent's conduct, which led to the Formal Charge upon which the disciplinary hearing has proceeded. (Trans. pp. 85–86.)

18. Rule 8.2(a) of the Wyoming Rules of Professional Conduct states: "A lawyer shall not make a statement that the lawyer know[s] to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

19. It has been proved by clear and convincing evidence that Respondent violated Rule 8.2(a) by the [sic] making the allegation in the subject Motion that Judge Arnold had engaged in an improper *ex parte* communication with opposing counsel when she knew it to be false or with reckless disregard to its truth or falsity.

20. It has been proved by clear and convincing evidence that Respondent violated Rule 8.2(a) by making the allegation that Judge Arnold afforded favoritism to attorneys in opposing counsel's law firm when she knew it to be false or with reckless disregard to its truth or falsity.

21. Rule 8.4(d) of the Wyoming Rules of Professional Conduct states: "It is professional misconduct [for a lawyer] to: (d) engage in conduct that is prejudicial to the administration of justice."

22. It has been proved by clear and convincing evidence that Respondent violated Rule 8.4(d) by making the allegation in the subject Motion that Judge Arnold had engaged in an improper *ex parte* communication with opposing counsel for the purpose of having him recuse himself due to the nature of that allegation.

23. It has also been proved by clear and convincing evidence that Respondent violated Rule 8.4(d) by making the allegation that Judge Arnold afforded favoritism to attorneys in opposing counsel's law firm for the purpose of having him recuse himself due to the nature of that allegation.

[¶ 6] After reviewing several of the Standards for Imposing Lawyer Sanctions of the American Bar Association, including Standard 9.1, which provides for consideration of both aggravating and mitigating circumstances, the Board recommended to this Court that Respondent be suspended from the practice of law for a period of two months, that she comply with Section 22 of the Disciplinary Code for the Wyoming State Bar, that she pay the costs of the proceedings in the amount of $6,676.67, and that she pay an administrative fee of $1,000.00.[4] The Board found no mitigating circumstances, but found the following aggravating circumstances: a prior disciplinary record, multiple offenses, refusal to acknowledge wrongful nature of conduct, and substantial experience in the practice of law.[5]

resented party is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances:*
    (1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have eviden-

tiary support after a reasonable opportunity for further investigation or discovery; and
    (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
(Emphasis added.)

4. Section 22 provides rules for client notification when a lawyer has been disbarred or suspended from the practice of law.

5. ABA Standard 9.21 defines "aggravating circumstances" as "any consideration, or factors that may justify an increase in the degree of

## ATTORNEY DISCIPLINE PROCEDURES

[¶ 7] Attorneys who practice law in Wyoming are subject to the exclusive disciplinary jurisdiction of the Wyoming Supreme Court and the Board of Professional Responsibility of the Wyoming State Bar pursuant to Section 1(a) of the Disciplinary Code for the Wyoming State Bar. Section 9 of the Disciplinary Code creates the Board and gives it the authority to conduct disciplinary hearings upon the filing of a formal charge, as defined in Section 3(p), and as limited by Section 12. If, after a hearing, the Board determines that misconduct has been proved by clear and convincing evidence, the Board may, pursuant to Section 9(iv), determine appropriate private discipline, or may recommend to the Court that public discipline be imposed. When a recommendation for public discipline has been made to this Court, Section 21(c) allows such briefing and argument as the Court deems appropriate, with the Court then determining and imposing discipline. Section 4(a)(ii) of the Disciplinary Code provides that temporary suspension of an attorney's right to practice law is a form of public discipline.

[¶ 8] In *Meyer v. Norman,* 780 P.2d 283, 286–288 (Wyo.1989), we described the structural relationship between the Wyoming Supreme Court and the Wyoming State Bar, but we did not detail the procedure that this Court follows in reviewing and acting upon a disciplinary recommendation of the Board. Although the case arose under earlier versions of the Rules of Professional Conduct and the Disciplinary Code, the procedural holdings of *Mendicino v. Whitchurch,* 565 P.2d 460, 465–66, 475 (Wyo.1977) remain valid; that is, the Board is an arm of this Court whose purpose is to investigate allegations of professional misconduct and to report its findings and recommendations to the Court, which is the ultimate decision-maker in attorney disciplinary matters. Sections 21(c)(iii) and (iv) of the current Disciplinary Code make it clear that the Court's determination of appropriate discipline is its own, but that

discipline to be imposed." The specific factors found by the Board are specified in ABA Stan-

the determination must be made upon the evidence that was presented to the Board at the hearing. That process has been described as: "All attorney discipline cases require a two step analysis. First, the Court must determine whether the record supports the findings and recommendations, then it must independently determine the sanctions warranted by the facts of the case." *Idaho State Bar v. Souza,* 142 Idaho 502, 129 P.3d 1251, 1254 (2006).

## DISCUSSION

[¶ 9] Because this case turns upon the precise language used by Respondent in the allegedly offending motion, we will quote that language at length:

5. That the Respondent was able to acquire a hearing date the very day the Order Reassigning Judge was entered creates an appearance of impropriety. Add to that fact that Petitioner was apprised Thursday, October 4, 2007, that Respondent had already acquired a trial date with Judge Arnold and would be filing a motion for reassignment post haste. In other words, the reassignment of this case was a fait d'accompli [sic] as of October 4, 2007. [Emphasis deleted.]

How can an attorney have gotten a trial date from a judge who was not assigned to the case? *That could only be done by having engaged in improper ex parte communications with the court.* This means that opposing counsel had to have engaged in professional conduct that is not allowed by Rule 3.5(a) and (b), Rules of Professional Conduct. This Rule provides that a lawyer "shall not seek to influence a judge . . . by means prohibited by law" and *"shall not communicate with an official acting in an adjudicative capacity concerning any substantive or procedural issue before him, or which is likely to be before him, unless authorized to do so by law or court order."* Opposing counsel could not know that the case would be reassigned without having already received assurance from the court that [R]espon-

dards 9.22(a), (d), (g), and (i).

dent's motion would be granted and that a specific hearing date would be set.

Consider, too, that Canon 3B(7)(a)(i) of the Judicial Code of Conduct provides:

"Where circumstances require, ex parte communications for scheduling ... that do not deal with substantive matters or issues on the merits are authorized, provided: (1) *the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication;* and (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond."

*It is obvious enough that Respondent filed his reassignment motion to achieve a procedural and tactical advantage. Yet no one notified the Petitioner of opposing counsel's communications with Judges Arnold or Campbell at the time those communications occurred much less took any action to determine whether Petitioner would stipulate to the reassignment of the case or to the trial date.* In each instance that there was a contact between opposing counsel and the court, Petitioner should have been contacted by opposing counsel or the Judge's office.

6. It has been rumored that if one is affiliated with [opposing counsel's law firm], favoritism may be accorded her by Judge Arnold or those in his office. Because opposing counsel is with the law firm [ ], Petitioner believes that favoritism was at play here.

7. Canon 2, Code of Judicial Conduct, provides that *a judge shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary,* i.e., a judge shall avoid the appearance of impropriety in all of the judge's activities.

(Emphasis added.)

[¶ 10] The Board concluded that the language of this motion violated both Rule 8.2(a) (making a statement about a judge's integrity knowing the statement to be false or with reckless disregard as to the truth) and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent de-

fends herself on several fronts. First, she argues that the statements, as statements of belief or opinion, are protected by the First Amendment. *See, e.g., In re Green,* 11 P.3d 1078, 1085 (Colo.2000); *Idaho State Bar v. Topp,* 129 Idaho 414, 925 P.2d 1113, 1116 (1996); *Standing Comm. on Discipline of the United States Dist. Court for Cent. Dist. of Cal. v. Yagman,* 55 F.3d 1430, 1438 (9th Cir.1995). Second, she contends that even if the statements were false, she did not know them to be false, and under the applicable objective standard, she did not recklessly disregard the truth. *See, e.g., In re Cobb,* 445 Mass. 452, 838 N.E.2d 1197, 1213 (2005); *Anthony v. Virginia State Bar,* 270 Va. 601, 621 S.E.2d 121, 126–27 (2005); *In re Disciplinary Action Against Graham,* 453 N.W.2d 313, 322 (Minn.1990). Third, Respondent argues that an "ulterior" motive to get Judge Arnold to recuse himself due to the nature of the allegations in the motion was unnecessary inasmuch as the very purpose of the motion was to get Judge Arnold to reassign the case to another judge.

[¶ 11] We are not persuaded by Respondent's justifications for her conduct, and we conclude that Petitioner proved that Respondent violated the professional conduct rules by clear and convincing evidence, at least insofar as they relate to Respondent's allegation that Judge Arnold participated in improper *ex parte* communications with opposing counsel. The highlighted portions of the motion, especially when read together, are nothing more nor less than an allegation of fact—an allegation that Judge Arnold—and Judge Campbell, for that matter—had improper *ex parte* communications with opposing counsel, reasonably believing that such would give opposing counsel a procedural or tactical advantage in the proceedings.

[¶ 12] The clear and convincing evidence in the record that Judge Arnold did not have an *ex parte* communication with Respondent's opposing counsel is the direct statement, under oath, by both the judge and the attorney that they did not speak to one another, along with the clear explanation that the hearing date was obtained from Judge Arnold's assistant. It is this same testimony that shows Respondent's reckless disregard

for the truth. Before filing the motion and making the false accusations, she could have made appropriate contact with Judge Arnold, or Judge Campbell, or her opposing counsel, or Judge Arnold's administrative assistant, but she did none of those things. Her reckless action violated Rule 8.2(a) of the Rules of Professional Conduct.

[¶ 13] Determinations of recklessness under Rule 8.2(a) are made using an objective, rather than a subjective standard. *In re Cobb*, 838 N.E.2d at 1213. This means that the attorney must have had an "objectively reasonable" basis for making the statements. *Id.* at 1212; *see also Anthony*, 621 S.E.2d at 126–27. In other words, the standard is whether a reasonable attorney would have made the statements, under the circumstances, not whether this particular attorney, with her subjective state of mind, would have made the statements. We cannot convince ourselves that any reasonable attorney would have filed this motion without any inquiry into the allegation of an improper *ex parte* contact. The dictate of W.R.C.P. 11(b), set forth above, that presentation of a motion or other pleading by an attorney is certification of factual support for the allegations contained therein, "formed after an inquiry reasonable under the circumstances," is repeated in Rule 3.1(c) of the Rules of Professional Conduct.[6] Lest there be any doubt about it, Comment 3 to Rule 3.3 of the Rules of Professional Conduct, which Rule is entitled "Candor toward the tribunal," repeats the admonition.[7]

[¶ 14] "Reckless disregard for the truth" does not mean quite the same thing in the context of attorney discipline proceedings as it does in libel and slander cases. A discussion of cases in both areas of the law may be helpful. In *New York Times Company v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), the United States Supreme Court struck a balance between a public official's right to be free from unwarranted injury to his reputation and the rights of free speech and free press by "prohibit[ing] a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

[¶ 15] Four years after *New York Times*, the concept of "reckless disregard for the truth" in a libel action by a public official was further defined in *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968):

> These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Citing *New York Times*, 376 U.S. at 287–88, 84 S.Ct. at 729–30, the Supreme Court in *St. Amant* added that "[f]ailure to investigate does not in itself establish bad faith." *Id.*,

---

**6.** Rule 3.1(c) reads as follows:

    (c) The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, *formed after reasonable inquiry*, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
(Emphasis added.)

**7.** Comment 3 to Rule 3.3 reads in pertinent part as follows:

    Representations by a Lawyer. [3] An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare Rule 3.1. However, *an assertion purporting to be on the lawyer's own knowledge,* as in an affidavit by the lawyer or in a statement in open court, *may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry* ....
(Emphasis added.)

390 U.S. at 733, 88 S.Ct. at 1326. *See also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991).

[¶ 16] We will mention one other libel case because the public figure plaintiff was a candidate for judicial office. In *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989), the Supreme Court reiterated what "reckless disregard for the truth" means in the context of a public official's libel action:

> If a false and defamatory statement is published with knowledge of falsity or a reckless disregard for the truth, the public figure may prevail. A "reckless disregard" for the truth, however, requires more than a departure from reasonably prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. The standard is a subjective one-there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of . . . probable falsity. As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.

(Internal quotation marks and citations omitted.)

[¶ 17] We have set out these public official libel actions to contrast them with cases involving attorney discipline, for the purpose of showing that there is a distinct difference between the two types of cases. In *In re Disciplinary Action Against Graham*, 453 N.W.2d 313, 321–322 (Minn.1990), the Supreme Court of Minnesota explained the reason for the difference, in the context of the analysis of an alleged Rule 8.2 violation:

> This court, however, has not previously determined whether the constitutional qualified immunity standard of *New York Times* applies when determining whether Rule 8.2(a) has been violated. The language of Rule 8.2(a), MRPC, impliedly incorporates the standard . . . .
>
> . . . .

On its face, Rule 8.2(a) rejects an absolute privilege for false statements made by attorneys with reckless disregard for their falsity. It is identical to Rule 8.2, American Bar Association Model Rules of Professional Conduct ("ABA MRPC"). Commentators have noted that Rule 8.2, ABA MRPC, is consistent with the constitutional limits placed on defamation actions by . . . *New York Times* . . . .

Nevertheless, the standard cannot be equivalent to that of *New York Times* and its progeny, because the standard for determining actual malice must be objective when dealing with attorney discipline. We reach this conclusion because of the interests attorney discipline serves.

This court certifies attorneys for practice to protect the public and the administration of justice. That certification implies that the individual admitted to practice law exhibits a sound capacity for judgment. Where an attorney criticizes the bench and bar, the issue is not simply whether the criticized individual has been harmed, but rather whether the criticism impugning the integrity of judge or legal officer adversely affects the administration of justice and adversely reflects on the accuser's capacity for sound judgment. An attorney who makes critical statements regarding judges and legal officers with reckless disregard as to their truth or falsity and who brings frivolous actions against members of the bench and bar exhibits a lack of judgment that conflicts with his or her position as "an officer of the legal system and a public citizen having special responsibility for the quality of justice." Minn.R.Prof.Conduct, Preamble.

We agree with the distinction made by the Supreme Court of Indiana when it stated:

> The societal interests protected by [defamation and professional disciplinary] law are not identical. Defamation is a wrong directed against an individual and the remedy is a personal redress of this wrong. On the other hand, the Code of Professional Responsibility encompasses a much broader spectrum of protection.

Professional misconduct, although it may directly affect an individual, is not punished for the benefit of the affected person; the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations.

*In re Terry,* 271 Ind. 499, 502, 394 N.E.2d 94, 95 (1979), *cert. denied sub nom Terry v. Indiana Supreme Ct. Disciplinary Comm'n,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980).

Because of the interest in protecting the public, the administration of justice and the profession, a purely subjective standard is inappropriate. The standard applied must reflect that level of competence, of sense of responsibility to the legal system, of understanding of legal rights and of legal procedures to be used only for legitimate purposes and not to harass or intimidate others, that is essential to the character of an attorney practicing in Minnesota. Thus, we hold that the standard must be an objective one dependent on what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances.

In applying this objective standard to the attorney's conduct, the Minnesota Supreme Court held that acting upon suspicion, without any corroborative evidence, violated Rule 8.2. *Id.* at 323–24.[8]

[¶ 18]  Numerous courts agree with *Graham* that the standard for judging whether an attorney has acted with reckless disregard for the truth under rules equivalent to Rule 8.2 is an objective standard, and that the attorney's failure to investigate the facts before making the allegation may be taken into consideration. *See, e.g., In re Cobb,* 838 N.E.2d at 1211–1216; *Yagman,* 55 F.3d at 1437; *United States Dist. Court for the Eastern Dist. of Wash. v. Sandlin,* 12 F.3d 861, 867 (9th Cir.1993). In addition, courts have noted that "[s]tatements by an attorney critical of a judge in a pending case in which the

attorney is engaged are especially disfavored." *In re Cobb,* 838 N.E.2d at 1211; *see also Anthony,* 621 S.E.2d at 126.

■  [¶ 19]  It almost goes without saying that this recklessness as to the truth is prejudicial to the administration of justice, and therefore also violates Rule 8.4(d). By baselessly impugning the integrity of a sitting judge, Respondent encouraged her client to believe that the judicial system was unfair and partial. Furthermore, she did so in a manner that was unnecessary and inappropriate. If she believed that the legitimate representation of her client required her to seek Judge Arnold's removal from the case, she could have availed herself of a peremptory challenge motion under W.R.C.P. 40.1(b)(1), or a motion for disqualification for cause under W.R.C.P. 40.1(b)(2):

**Rule 40.1.  Transfer of trial and change of judge.**

. . . .

(b)  *Change of judge.—*

(1) Peremptory Disqualification.—A district judge may be peremptorily disqualified from acting in a case by the filing of a motion requesting that the judge be so disqualified. The motion designating the judge to be disqualified shall be filed by the plaintiff within five days after the complaint is filed; provided, *that in multi-judge districts, the plaintiff must file the motion to disqualify the judge within five days after the name of the assigned judge has been provided* by a representative of the court to counsel for plaintiff by personal advice at the courthouse, telephone call, or a mailed notice. The motion shall be filed by a defendant at or before the time the first responsive pleading is filed by the defendant or within 30 days after service of the complaint on the defendant, whichever first occurs, unless the assigned judge has not been designated within that time period, in which event the defendant must file the motion within five days after the name of the assigned judge has been provided by a representative of

---

**8.** Without specifically making the connection, the Minnesota court implied what it meant by "suspicion" and "lack of corroboration" by quoting the conclusion of the Office of Professional Responsibility that the events underlying the attorney's accusations "might easily have led to inquiry; they should not have led to accusation or allegation. . . ." *Graham,* 453 N.W.2d at 319 n. 4.

the court to counsel for the defendant by personal advice at the courthouse, telephone call, or a mailed notice. One made a party to an action subsequent to the filing of the first responsive pleading by a defendant cannot peremptorily disqualify a judge. In any matter, a party may exercise the peremptory disqualification only one time and against only one judge.

(2) Disqualification for Cause.—Whenever the grounds for such motion become known, any party may move for a change of district judge on the ground that the presiding judge: (A) has been engaged as counsel in the action prior to being appointed as judge; (B) is interested in the action; (C) is related by consanguinity to a party; (D) is a material witness in the action; or (E) *is biased or prejudiced against the party or the party's counsel.* The motion shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such grounds. Prior to a hearing on the motion any party may file counter-affidavits. The motion shall be heard by the presiding judge, or at the discretion of the presiding judge by another judge. If the motion is granted, the presiding judge shall immediately call in another judge to try the action.

(Emphasis added.)

[¶ 20] Where the rules provide such clear and unequivocal methods for the removal of a district court judge, especially where the same can be accomplished without even having to show cause, we simply cannot condone an attempt to evade the rules via false accusations contained in a motion that violated W.R.C.P. 11 and Wyo. R. Prof. Conduct Rule 3.1(c) due to lack of any reasonable inquiry. There can perhaps be no more egregious blow to the administration of justice than an unfounded accusation that a judge has violated the Code of Judicial Conduct. No doubt, that is why W.R.C.P. 40.1(b)(2) requires accusations of bias to be made by affidavit. The protection of the First Amendment does not extend so far as

to sanctify reckless disregard for the truth, as even the cases cited by Respondent repeatedly tell us.

[¶ 21] It is uncontested that Respondent's motion also contained the rumor and personal belief accusations against Judge Arnold that alleged favoritism toward opposing counsel's law office. While the fact that those accusations were made has been shown by clear and convincing evidence, we cannot say that Petitioner has shown these statements to be beyond the protection of the First Amendment, or even that the accusations are false. In fact, the section of Petitioner's brief discussing the First Amendment contains no citation to any authority.[9] Without more clear guidance, we are reluctant to determine in this case how far the First Amendment goes in protecting such accusations. Consequently, we will not accept the Board's findings and conclusions as they apply to that limited issue, and will not consider any purported violation of the Rules of Professional Conduct for Attorneys at Law arising therefrom.

### SANCTIONS

[¶ 22] The recommendations of the Board in regard to sanctions were mentioned above (*see supra* ¶ 6): suspension from the practice of law for two months, compliance with Section 22 of the Disciplinary Code, and payment of a total of $7,676.67 in costs and administrative fees. We have independently reviewed those recommendations in the context of the record, and we find them reasonable under the circumstances, even if we disregard the "rumor and belief" accusations. Respondent is an experienced attorney, having been practicing for 30 years. She has refused to acknowledge any wrongdoing in the primary matter discussed herein. There is also the lack of reasonable diligence that she conceded in the secondary matter. And finally, we cannot ignore the Order of Public Censure entered in 2005 for a violation of Rule 1.15(d) of the Wyoming Rules of Professional Conduct for Attorneys at Law.

9. Petitioner's entire Free Speech argument is that "this case has nothing to do with Free Speech."

[¶ 23] **IT IS, THEREFORE, HEREBY ORDERED:**

1.  That the Report and Recommendation for Discipline filed by the Board of Professional Responsibility of the Wyoming State Bar on September 19, 2008, be and it is hereby approved, confirmed, and adopted by the Court as limited above; and

2.  That Sue Davidson be suspended from the practice of law for a period of two months, commencing April 21, 2009; and

3.  That Sue Davidson pay to the Board of Professional Responsibility the sum of $6,676.67 for the cost of these proceedings, plus the sum of $1,000.00 as an administrative fee, no later than July 1, 2009.

4.  That Sue Davidson comply with Section 22 of the Disciplinary Code for the Wyoming State Bar.

**BY THE COURT:***

/s/ Barton R. Voigt
Barton R. Voigt
Chief Justice

* Judge Donnell sat in this matter for Justice Burke who is recused; Justice Golden would have re- duced the suspension to one month.