Present: Carrico, C.J., Lacy, Keenan, Koontz, and Kinser, JJ., and Compton and Stephenson, Senior Justices

VICTOR ALAN MOTLEY

OPINION BY
v. Record No. 000392     CHIEF JUSTICE HARRY L. CARRICO
September 15, 2000

VIRGINIA STATE BAR

FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

This appeal presents for review an order of the Virginia State Bar Disciplinary Board (the Disciplinary Board) involving Victor Alan Motley (Motley), a Richmond attorney. Dated September 29, 1999, the order imposed upon Motley a public reprimand for failing to inform a client in a criminal case of the denial of his appeal by the Court of Appeals of Virginia in time for him to decide whether to seek an appeal to this Court. Motley is here on an appeal of right. Finding no error in the order of the Disciplinary Board, we will affirm.

### Background

Motley's public reprimand resulted from his handling of a criminal case involving Brian Lee Rowe (Rowe) in the Circuit Court of the City of Richmond. Motley was retained by Rowe's parents and received from them a retainer fee of $1,000. Originally, Rowe was charged with two counts of capital murder, one count of robbery, and three counts of use of a firearm. However, at the time Motley was

retained, the capital murder charges had been reduced to first degree murder. Motley was retained for the purpose of arranging for Rowe to plead guilty to "the lowest possible charges."

Motley was successful in arranging with the prosecutor for Rowe to plead guilty to two counts of second degree murder, one count of robbery, and three counts of use of a firearm. Rowe and his parents expected that Rowe would receive a sentence of no more than thirteen years and two months, which, according to what Motley told them, was the maximum punishment under the sentencing guidelines. Motley argued for application of the guidelines, but the court sentenced Rowe to serve a total of ninety-three years.

Rowe's parents then asked Motley "what could be done," and Motley agreed to appeal the case for an additional fee of $2,000. Motley filed a motion in circuit court to withdraw Rowe's guilty pleas or, in the alternative, for reconsideration of the sentence. The motion was denied, and Motley appealed the denial to the Court of Appeals. That court denied the petition for appeal by unpublished order. (No. 2718-95-2, April 15, 1996). The court noted, inter alia, that the circuit court had found the sentencing guidelines inapplicable to permit a sentence of thirteen years and two months because Rowe "faced a mandatory

2

thirteen years on the firearms charges alone, without the additional charges of robbery and murder."  Id.

Rowe had thirty days after entry of the order of April 15, 1996, within which to file a notice of appeal with the clerk of the Court of Appeals (Rule 5:14(a)) and a petition for appeal with the clerk of this Court (Rule 5:17(a)(2)). Neither document was filed within the prescribed time.[1]

On June 24, 1996, Rowe's mother, Claretha A. Rowe, filed with the Virginia State Bar a complaint against Motley alleging that he had failed to inform Rowe or his parents of the Court of Appeals' denial of Rowe's petition for appeal until it was too late to petition this Court for an appeal.  The Third District Committee, Section Two (the Committee), determined that Motley had failed timely to inform Rowe or his parents of the Court of Appeals' action. The Committee decided it would offer Motley an opportunity to comply with certain terms and conditions as a predicate to the imposition of a private reprimand with terms but, failing such compliance, that it would impose a public

---

[1] This Court awarded Rowe a delayed appeal on March 6, 1997, following a finding by the Circuit Court of the City of Richmond in a habeas corpus proceeding that Motley had been ineffective for "[f]ailing to perfect an appeal to [this Court] following the Virginia Court of Appeal's refusal to hear [Rowe's] appeal."  The petition for appeal filed pursuant to the award of the delayed appeal was refused by this Court.

3

reprimand. Motley appealed the Committee's determination to the Disciplinary Board.

After a hearing, the Disciplinary Board affirmed the District Committee's determination but imposed as a sanction an opportunity to comply with altered terms and conditions as part of a private reprimand, with the proviso that if Motley failed to comply with the terms and conditions, a public reprimand would be imposed. On September 29, 1999, the Disciplinary Board entered an order stating that Motley had "willingly failed and refused to comply with the terms of [the] Private Reprimand" and, therefore, a public reprimand was imposed.

Disciplinary Rule 6-101(C) of the Virginia Code of Professional Responsibility, which was in effect at all times pertinent to the present controversy, provided that "[a] lawyer shall keep a client reasonably informed about matters in which the lawyer's services are being rendered."[2] In imposing a public reprimand upon Motley, the Disciplinary Board found that he had "failed to timely inform either Rowe or his parents of the denial of the petition [for] appeal by the Court of Appeals in time to

---

[2] Effective January 1, 2000, the Virginia Code of Professional Responsibility was replaced by the Virginia Rules of Professional Conduct. The subject of reasonable

4

allow them to decide whether to appeal further to the Virginia Supreme Court" and, therefore, that Motley had "engaged in misconduct in violation of DR-6-101C of the Virginia Code of Professional Responsibility."

Issues on Appeal

1. Unconstitutional Vagueness

Motley argues that DR 6-101(C) is unconstitutionally vague. Citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972), Motley opines that the vagueness doctrine requires that a statute give a person of ordinary intelligence a reasonable opportunity to know what conduct is commanded or prohibited. He says the phrase "reasonably informed" in DR 6-101(C) is not defined and "gives no guidelines as to what is reasonable and leaves respondent at the [whim] of the personalities making up [the Disciplinary Board]."

We disagree with Motley. Disciplinary Rule 6-101(C) is presumed to be constitutional, and we will resolve any doubt regarding its constitutionality in favor of its validity. See Pulliam v. Coastal Emergency Servs., Inc., 257 Va. 1, 9, 509 S.E.2d 307, 311 (1999). Furthermore, "[v]agueness challenges to statutes not threatening First

---

communication between lawyer and client is now contained in Rule 1.4(a),(b), and (c) of the new Rules.

Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988).

We find nothing vague about the language of DR 6-101(C) with respect to the conduct commanded of Motley in light of the facts of this case. Beyond any question, the conduct commanded was for Motley to inform Rowe of the denial of his appeal by the Court of Appeals in time for him to decide whether to appeal the denial and, if his decision was affirmative, to file the notice of appeal and petition for appeal within the thirty-day period prescribed by Rules 5:14(a) and 5:17(a)(2).

### 2. Sufficiency of Evidence

Motley argues that the finding of the Disciplinary Board that he failed timely to inform Rowe of the denial of his appeal is not justified by a reasonable view of the evidence. On review of a disciplinary proceeding, "we will make an independent examination of the whole record, giving the factual findings of the Disciplinary Board substantial weight and viewing them as prima facie correct. While not given the weight of a jury verdict, those conclusions will be sustained unless it appears they are not justified by a reasonable view of the evidence or are contrary to law." Blue v. Seventh Dist. Comm., 220 Va. 1056, 1061-62, 265

S.E.2d 753, 757 (1980). And we view the evidence in the light most favorable to the side that prevailed below. Rutledge v. Virginia State Bar, 214 Va. 312, 313, 200 S.E.2d 573, 574 (1973).

Here, the evidence was in sharp conflict. Motley testified that he informed both Rowe and his mother of the Court of Appeals' denial of Rowe's petition for appeal within the thirty-day period following the denial. Both Rowe and his mother denied receiving knowledge of the Court of Appeals' action within the thirty-day period.

Motley introduced telephone bills which showed collect calls ostensibly placed by Rowe to Motley's office from Southampton Reception Center on April 22, 1996, and from Brunswick Correctional Center on April 30, 1996. Both these dates were within the thirty-day period after the Court of Appeals' denial of Rowe's petition for appeal, and Motley claimed that on both occasions he informed Rowe the appeal had been denied. Rowe testified, however, that he was not confined at Southampton Reception Center on April 22, 1996. He also said that on the one occasion he reached Motley by telephone from Brunswick Correctional Center within the thirty-day period following April 15, 1996, Motley told him he "hadn't heard anything" concerning the outcome of the appeal.

7

Rowe testified further that he received nothing from Motley in the mail within the thirty-day period following April 15, 1996, and that it was not until June that Motley told him in a telephone conversation that the appeal had been denied. A "couple of days later," on June 18, 1996, Rowe wrote Motley requesting a copy of the Court of Appeals' decision and received a copy in the mail.

Motley also claimed that, in the thirty-day period, he mailed Rowe's mother a copy of the Court of Appeals' order denying Rowe's appeal, but he could not document the mailing with a copy of a cover letter or otherwise. In addition, Motley introduced a memorandum prepared by his secretary stating that Ms. Rowe called the office on April 5, 1996, and left a message that she would make a payment on Motley's fee on April 15. Motley also introduced a copy of a receipt dated May 10, 1996, for a payment of $100 purportedly made on that date by Ms. Rowe on a visit to Motley's office.

However, Ms. Rowe testified that she received nothing in the mail from Motley within the thirty-day period following April 15, 1996, and that she only learned of the denial of the appeal when Rowe informed her in late May or June that Motley had just told him the appeal had been denied. Ms. Rowe then contacted Motley, and he confirmed

8

that the appeal had been denied and told her that it was "too late" to appeal further.

Ms. Rowe also denied that she "left a message" with Motley's office promising to make a payment on his fee on April 15, 1996, and she said that she did not recall visiting Motley's office on May 10, 1996, when Motley claimed she made a payment in the office. She insisted, instead, that March 6, 1996, was the last date upon which she made a payment.

Motley says Rowe and his mother were "not credible witnesses." We disagree. Their testimony was not inherently incredible, and it was for the Committee, as trier of fact, to determine the credibility of the witnesses and to resolve the conflicts between Motley's testimony and the testimony of Rowe and his mother.

The burden was on the Bar to establish Motley's violation by clear proof. See Blue, 220 Va. at 1062, 265 S.E.2d at 757. With the conflicts resolved against Motley, the evidence constituted clear proof to support the finding by the Disciplinary Board that Motley violated DR 6-101(C).

### 3. Prior Disciplinary Record

Motley argues that the Disciplinary Board erred in considering his prior disciplinary record in determining to

impose a public reprimand upon him.[3]  While his argument is difficult to follow, he appears to seek a redetermination of the merits of the prior proceedings, an exercise in which we decline to indulge.  He also appears to argue the relevancy of the evidence of his prior conduct.

However, "[b]ecause a primary purpose of the Disciplinary Rules is the protection of the public, it is clearly the Board's duty, in determining an appropriate penalty, to consider whether the attorney before it has demonstrated a history of professional conduct harmful to his clients or to the public generally."  Tucker v. Virginia State Bar, 233 Va. 526, 533, 357 S.E.2d 525, 529 (1987).  Hence, the evidence of Motley's disciplinary record was relevant and properly considered by the Disciplinary Board.

For all these reasons, we will affirm the Disciplinary Board's order of September 29, 1999.

                                                    Affirmed.

---

[3] The record shows that Motley's disciplinary history consisted of two dismissals of complaints with terms (VSB Docket Nos. 86-146 and 91-031-0795) and a private reprimand with terms (VSB Docket No. 89-031-0495).