COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Decker
Argued at Chesapeake, Virginia

ROBERT CHIANELLI, SR.

v.      Record No. 0452-14-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
APRIL 21, 2015

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Leslie L. Lilley, Judge

James O. Broccoletti (Randall J. Leeman, Jr.; Zoby, Broccoletti &
Normile, P.C., on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Robert Chianelli, Sr. ("Chianelli") appeals his conviction for the sale/possession with

intent to sell drug paraphernalia pursuant to Code § 18.2-265.3 by the City of Virginia Beach

Circuit Court (the "circuit court"). Chianelli asserts two assignments of error in support of his

appeal. First, he argues that the circuit court erred in "holding that he could not raise a facial

challenge to Virginia's drug paraphernalia statute." Second, he argues that the circuit court erred

in rejecting his challenge to Code § 18.2-265.3 on the ground that it was unconstitutionally

vague as applied to Chianelli's conduct.

I. BACKGROUND

"On appeal, we view the facts established at trial in the 'light most favorable' to the

prevailing party below, in this case the Commonwealth, and we grant to that party all fair

inferences flowing from those facts." Crawford v. Commonwealth, 55 Va. App. 457, 462 n.1,

686 S.E.2d 557, 559 n.1 (2009) (citations omitted). In this light, the evidence establishes the following.

## A. The Investigation

Chianelli has owned and operated Papa Joe's Smoke Shop ("Papa Joe's) in Virginia Beach since 2008. On April 27, 2010, undercover Virginia Beach police detectives Cutler and Shabu visited Papa Joe's to investigate a complaint that the store was selling suspected drug paraphernalia. Upon first entering the store the officers observed "hundreds of bowls," "bongs," "drug test kits," "liquid detoxification drinks," "vaporizers," "grinders," "hidden concealment devices," "digital scales,"—some of which were designed to look like innocuous items such as a cell phone—and a "high end LED grow apparatus." Throughout the store, there were paraphernalia and memorabilia for sale, such as glass bowls, glass bongs, magazines, stickers, posters,[1] etc., that depicted marijuana leaves. There was also a mannequin wearing a "gas mask" "with a bong apparatus attached to it."

The undercover detectives approached the counter and told the clerk that they "were looking for some glass bowls." There was a glass display case with a sign that read, "All pipes are for tobacco use only. All pipes and water pipes are called just that, please do not call them anything else. Any mention of illegal substances will result in refusal of sale, and you'll be asked to leave. Thank you. Papa Joe's." Another sign read, "All accessory items are for tobacco use only." Nearby, another sign stated, "IQ test, Can you say water pipe?" After the clerk removed several glass bowls from the display case, and the detectives selected one to purchase, Shabu told Cutler within earshot of the clerk that "I'll buy the bud, if you buy the

---

[1] Photographic trial exhibits of what was depicted on some of the posters that were for sale include: "Do you love pot? Yes!;" "Marijuana. The controversy rages;" "Should we legalize pot?;" "Does grass have therapeutic value?;" "Is devil's weed addictive?;" and "Reefer madness. The sweet pill that makes life better. Women cry for it. Men die for it."

bowl."[2] Cutler turned to the clerk and said "You heard that right?" to which the clerk said "yeah." Cutler then asked the clerk directly if they had "some bud in the back," but the clerk said that they did not "have any of that here."

Before exiting Papa Joe's, the detectives walked over to a large "high end," "LED" light "grow machine." Chianelli initiated a conversation with Cutler and Shabu where he described the machine's attributes. Cutler then said to Shabu, "[w]e can go half on this when you get your paycheck, but then we won't be able to get any bud for a while." Shabu said to Chianelli, "I thought it was illegal to sell this stuff in Virginia Beach?" Chianelli responded, "It's for tobacco use only." Shabu replied, "Oh, that's how you get around it?" Chianelli said, "[w]ell, you just have to be discreet about it. Things are a little lax now. They have been a little more laxed [sic] over the past four or five years."

On May 3, 2010, Cutler and Shabu again entered Papa Joe's in their undercover capacity. The two detectives approached the same clerk and asked about the grow equipment and if the store had sold many of those machines to which the clerk replied no. Cutler stated that he thought this was because a person would have to spend all their money to buy it, then grow it, and "wouldn't have any bud for a while." He asked the clerk "how long it would take to grow?" The clerk replied, "Six weeks. Yeah. That stuff grows like weed." Cutler and Shabu then browsed some other merchandise, and Cutler told the clerk that he would "take this one-hitter." A "one hitter" is a small smoking device used to place a small amount of marijuana for "one quick hit."

Finally, on May 5, 2010, Cutler and Shabu returned to Papa Joe's, this time identifying themselves as police officers investigating the sale of illegal drug paraphernalia, and informed

---

[2] At trial, both officers testified as experts and in their training, knowledge, and experience as to the meaning of certain terms and their relevance to marijuana use. For example, Cutler explained that "bud" was another term for marijuana.

Chianelli that they would be seizing any illegal drug paraphernalia. Chianelli gave the officers permission to search the store. The officers seized and photographed dozens of items. In addition to the items described above, the officers seized what they believed to be synthetic cannabinoids and pouches and cases used to transport pipes and bongs. Inside Chianelli's back office, the officers saw a sign on the wall that said "Mary Jane's potpourri. Slinging it here," and another that said "100 percent natural dank on sale here."[3] Inside his desk, they recovered numerous business cards and advertisements depicting marijuana leaves, a card that depicted a topless woman and read "I love pot," as well as catalogs featuring various types of glass bongs for sale. The officers did not seize any items that were unrelated to drug paraphernalia such as tobacco products, beer, energy drinks, soft drinks, cigars, cigarettes, humidors, hookahs,[4] etc. No marijuana was found on the premises.

After collecting all the evidence, Cutler advised Chianelli of his rights to counsel and to remain silent, and Chianelli indicated that he understood his rights and then waived those rights to make a statement to the detective. At trial Cutler testified to highlights of their conversation as follows:

> [Cutler:] "You understand customers come in to buy paraphernalia for the purposes of smoking marijuana or other illegal substances with them, correct?"
>
> [Chianelli:] "I do understand that."
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> [Chianelli:] "I sell to people who have legitimate medical problems. They don't like prescription medications."

---

[3] Shabu testified that in his training and experience, "dank" "refers to a higher quality of marijuana or a high grade marijuana." App. at 78.

[4] A "hookah" is a device used for smoking flavored tobacco "that has a long flexible tube whereby the smoke is cooled by passing through water." Webster's Third New International Dictionary 1088 (1993).

[Cutler:] "You know that smoking marijuana is illegal in Virginia?"

[Chianelli:] "Of course I do."

\* \* \* \* \* \* \*

[Cutler:] "You do understand that your bongs are used to smoke marijuana, correct?"

[Chianelli:] "Yes, they can be used to smoke marijuana." . . . "Things [with respect to marijuana] appear to becoming accepted throughout the country."

[Cutler:] "Why are there marijuana leaves depicted on items for sale in your store?"

[Chianelli:] "Because manufacturers make them that way."

Cutler also advised the store clerk of his constitutional rights to counsel and to remain silent who similarly indicated that he understood his rights and waived those rights to make a statement. Cutler asked the clerk how often people enter the store looking to purchase marijuana. The clerk said, "Once a month. People ask for marijuana. People know how to talk though. People know what the pipes are used for. If they want to do illegal things on their own time, that's up to them." Cutler asked, "You know that a significant amount of the products here are used to smoke marijuana, right?" He replied "yes."

### B. The Conviction

Chianelli and the clerk were issued summons and jointly tried in the Virginia Beach General District Court (the "district court"). Both Cutler and Shabu testified as to the details of the investigation of Papa Joe's as described above. Shabu was qualified as an expert in the field of use, packaging, and distribution of controlled substances, particularly marijuana. Shabu explained the relevance of many of the items and terms that related to marijuana consumption, specifically that many of the items collected from Papa Joe's were primarily used and designed

to smoke or consume marijuana.  In his experience, those items were not used in connection with tobacco use.

Chianelli testified in his own defense.  He stated that he did not intend to sell any of the items for the use of marijuana, but rather "the products in the store are sold for the use of tobacco and legitimate herbs that are commercially available on the market."  In order to ensure that customers understand that the products for sale are not intended to be used for illegal purposes, Chianelli put the signs in the store.  According to Chianelli, if a customer said that they wanted to use something for illegal purposes they would be asked to leave immediately.  Chianelli said that although he understood that marijuana use is illegal, he did not really understand that the distribution of the products he carried for the use of marijuana was also illegal.  He based this assumption on the fact that since he has owned the store, numerous police officers had come in the store and never told him that any of the items he was selling were illegal.  Chianelli clarified his statement to the police, i.e., that he understood that some of the products he sold *could* be used to smoke marijuana but he does not sell them for that purpose.  Chianelli testified that "once or twice" he "may" have sold products to individuals who have prescriptions to smoke marijuana.

The district court found Chianelli and the clerk guilty of misdemeanor sale of drug paraphernalia in violation of Code § 18.2-265.3.  Only Chianelli appealed his conviction to the circuit court.

On June 21, 2013, Chianelli moved to dismiss the charge in the circuit court on the ground that "the statutes prohibiting the sale of drug paraphernalia are unconstitutionally vague."  Specifically, he argued that Code § 18.2-265.3 (Virginia's prohibition on the sale of drug paraphernalia) and Code § 18.2-251.1 (Virginia's medical marijuana statute) conflict and consequently prevent the average citizen from knowing what conduct is prohibited.  Chianelli

additionally argued that there was no evidence that he knew or reasonably should have known that his products were designed for unlawful purposes or that he intended that the products be used for unlawful purposes. The circuit court took the matter under advisement, and the parties submitted a transcript of the district court proceedings as stipulated evidence.

The circuit court issued a detailed fourteen-page letter opinion denying Chianelli's motion to dismiss. The circuit court found that because Chianelli's facial challenge to Code § 18.2-265.3 did not implicate First Amendment concerns, the court would address Chianelli's vagueness challenge on an as-applied basis. The circuit court held that in conducting an as-applied analysis, Code § 18.2-265.3 provided Chianelli with sufficient notice of the prohibited activity and was sufficiently definite to avoid arbitrary and discriminatory enforcement.

Quoting Gonzales v. Carhart, 550 U.S. 124, 149 (2007), the circuit court found that a scienter requirement alleviates vagueness concerns because if the mens rea requirement is met, an individual has a reasonable opportunity to know what conduct was prohibited. The circuit court examined the scienter element of Code § 18.2-265.3 articulated in Morrison v. Commonwealth, 37 Va. App. 273, 557 S.E.2d 724 (2002). In Morrison, this Court held that Code § 18.2-265.3 requires that the Commonwealth only prove that the seller was aware at the time he sold the items or possessed the items with the intent to sell, that buyers in general are likely to use the items with illegal drugs—the Commonwealth is not required to prove that a seller knew that particular buyer intended to use them in that fashion. Furthermore, certain items listed in Code § 18.2-265.1(12) are *per se* drug paraphernalia because they have no other use than to consume illegal substances.[5] Because Chianelli possessed with the intent to sell many of the items listed in Code § 18.2-265.1(12), the circuit court found there was sufficient evidence to

---

[5] The Morrison Court based its holding on the United States Supreme Court's interpretation of an almost identically worded federal statute, 21 U.S.C. § 863, in Posters' N'Things, Ltd. v. United States, 511 U.S. 513 (1994).

find he had the requisite intent under Code § 18.2-265.3. Moreover, the circuit court noted that Chianelli admitted to the officers that "the products he sold could be used to smoke marijuana."

The circuit court further concluded that Chianelli had presented no evidence the police enforced the statute arbitrarily by specifically targeting his store, or that they had engaged in a pattern of favoritism. It held that the words of Code §§ 18.2-265.3 and 18.2-265.1 are precise and readily understood and clearly identify what items are prohibited drug paraphernalia and therefore do not allow individual police officers to decide what conduct is illegal and what is not.

As to Chianelli's vagueness argument stemming from an alleged conflict between Code § 18.2-265.3 and Virginia's medical marijuana statute, the circuit court held that Chianelli "lacked standing to challenge the law on such a theory," because Chianelli did not sell paraphernalia exclusively to individuals who held a valid prescription for marijuana. The circuit court declined to address such a hypothetical argument as it might apply to third parties.

Chianelli entered a conditional guilty plea reserving his right to appeal the circuit court's denial of his motion to dismiss on vagueness grounds.

## II. ANALYSIS

On appeal, Chianelli first argues that the trial court erred in "holding that he could not raise a facial challenge to Virginia's drug paraphernalia statute," and second, he argues that the trial court erred in rejecting his challenge to Code § 18.2-265.3 on the ground that it was unconstitutionally vague as-applied to Chianelli's conduct. This Court has not previously addressed the issue of the constitutionality of Code § 18.2-265.3.

This Court reviews the constitutionality of statutes *de novo*. Our review of Chianelli's arguments is guided by the well-established principle that duly enacted laws are presumed constitutional. See Tanner v. City of Va. Beach, 277 Va. 432, 438, 674 S.E.2d 848, 852 (2009). "We are required to resolve any reasonable doubt concerning the constitutionality of a law in

- 8 -

favor of its validity. Thus, if a statute or ordinance can be construed reasonably in a manner that will render its terms definite and sufficient, such an interpretation is required." Id. at 438-39, 674 S.E.2d at 852 (citations omitted). "'Nevertheless, construing statutes to cure constitutional deficiencies is allowed only when such construction is reasonable. A statute cannot be rewritten to bring it within constitutional requirements.'" Volkswagen v. Smit, 279 Va. 327, 336, 689 S.E.2d 679, 684 (2010) (quoting Jaynes v. Commonwealth, 276 Va. 443, 464, 666 S.E.2d 303, 314 (2008) (citation omitted)).

## A. Facial Challenge to Code § 18.2-265.3

Chianelli first argues that the circuit court erred in holding that he could not raise a facial vagueness challenge to Code § 18.2-265.3. He asserts that a facial analysis is "warranted and appropriate" because the statute "cannot be reconciled with Virginia's medical marijuana statute, and therefore, the entire statutory scheme is unconstitutional on its face."

In this case, the constitutional principles applicable to Chianelli's vagueness challenge derive from the requirement of fair notice embodied in the Due Process Clause. See Tanner, 277 Va. at 439, 674 S.E.2d at 852. Penal statutes must be sufficiently precise and definite to give fair warning to an actor that contemplated conduct is criminal. See id. There are two, independent ways in which a statute can be impermissibly vague. Volkswagen, 279 Va. at 337, 689 S.E.2d at 685. "'First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,'" or "'[s]econd, if it authorizes or even encourages arbitrary and discriminatory enforcement.'" Id. (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)).

However, "vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.'" Id. at 336, 689 S.E.2d at 684 (quoting Motley v. Va. State Bar, 260 Va. 243, 247, 536

S.E.2d 97, 99 (2000)).  Because our jurisprudence recognizes that a penal statute may be facially valid and yet unconstitutional as-applied in a particular case, "[t]he usual judicial practice is to address an as-applied challenge before a facial challenge."  Id. (internal quotations omitted). This method is generally more efficient because this sequencing decreases the odds that facial attacks will be addressed unnecessarily and avoids encouraging gratuitous wholesale attacks upon state laws.  See id.  Courts "should not declare a statute to be wholly unconstitutional unless such a determination is absolutely necessary to decide the merits of the case."  Id. at 337, 689 S.E.2d at 684.

In Toghill v. Commonwealth, ___ Va. ___, ___, 768 S.E.2d 674, 678 (2015), the Supreme Court of Virginia recently reaffirmed the rule that an "appellant can only mount a successful facial challenge to a statute by showing first that the statute in question is unconstitutional as applied to him."  Furthermore, "if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations."  MacDonald v. Commonwealth, 48 Va. App. 325, 329, 630 S.E.2d 754, 756 (2006) (citing Ulster Cnty. v. Allen, 442 U.S. 140, 154-55 (1979)).

Therefore, because Chianelli's argument raises no First Amendment concerns, we must first determine whether Code § 18.2-265.3 was unconstitutional as-applied to Chianelli's conduct.

### B.  As-Applied Challenge to Code § 18.2-265.3

Chianelli argues that the circuit court erred in holding that Code § 18.2-265.3(A) is not vague as-applied to his conduct.  Summarizing his argument, Chianelli asserts that the circuit court erred in holding that because he did not exclusively intend to sell products to individuals with medical marijuana prescriptions, his argument was merely hypothetical as-applied to his

conduct and he therefore did not have standing to challenge the charging statute on the basis that

Code §§ 18.2-265.3 and 18.2-251.1 conflict.[6]

Pursuant to Code § 18.2-265.3(A) it is a misdemeanor for

> Any person who sells or possesses with intent to sell drug
> paraphernalia, knowing, or under circumstances where one
> reasonably should know, that it is either designed for use or
> intended by such person for use to illegally plant, propagate,
> cultivate, grow, harvest, manufacture, compound, convert,
> produce, process, prepare, test, analyze, pack, repack, store,
> contain, conceal, inject, ingest, inhale, or otherwise introduce into
> the human body marijuana or a controlled substance.

In a different section of the Code, Code § 18.2-251.1, entitled "Possession or distribution of

marijuana for medical purposes permitted," describes three situations involving marijuana where

*prosecution* is prohibited:

> A. No person *shall be prosecuted* under § 18.2-250 or
> § 18.2-250.1 for the possession of marijuana or
> tetrahydrocannabinol when that possession occurs pursuant to a
> valid prescription issued by a medical doctor in the course of his
> professional practice for treatment of cancer or glaucoma.
>
> B. No medical doctor *shall be prosecuted* under § 18.2-248 or
> § 18.2-248.1 for dispensing or distributing marijuana or
> tetrahydrocannabinol for medical purposes when such action
> occurs in the course of his professional practice for treatment of
> cancer or glaucoma.
>
> C. No pharmacist *shall be prosecuted* under §§ 18.2-248 to
> 18.2-248.1 for dispensing or distributing marijuana or
> tetrahydrocannabinol to any person who holds a valid prescription
> of a medical doctor for such substance issued in the course of such
> doctor's professional practice for treatment of cancer or glaucoma.

(Emphasis added).  Code § 18.2-251.1 describes three situations involving marijuana where "no

person shall be prosecuted" under particular enumerated statutes.  It protects prescription holders

---

[6] Despite the Commonwealth's claim that the circuit court made a factual finding that
Chianelli was not in the business of selling paraphernalia to people with prescriptions for
marijuana, the circuit court only concluded that he did "not sell paraphernalia *only* to those who
hold a valid prescription for marijuana."

- 11 -

from being prosecuted for possession of marijuana under Code §§ 18.2-250 or 18.2-250.1 and doctors and pharmacists from being prosecuted for distribution of marijuana to valid prescription holders under Code §§ 18.2-248 or 18.2-248.1. Thus, when attempting to harmonize these statutes, it is important to note that rather than legalizing the possession of marijuana, what Code § 18.2-251.1 actually does is provide legislative immunity from prosecution to those who meet the statute's requirements. Code § 18.2-251.1 unquestionably does *not* immunize persons selling or intending to sell paraphernalia to an individual *without* a valid prescription from being prosecuted under Code § 18.2-265.3(A).[7]

Chianelli argues that,

> [r]ead together, [Code §§ 18.2-265.3 and 18.2-251.1] permit the possession of marijuana in some circumstances but categorically prohibit the sale of any item of any nature whatsoever in order to store, process, ingest, etc. that marijuana. . . . [T]his cannot be what the General Assembly intended when it passed the medical marijuana statute, and yet the legislature has provided no guidance on how to resolve the clear conflict between the paraphernalia statutes and the medical marijuana statute.

Chianelli asserts that the legislature has not clearly defined what conduct is to be prohibited because the two statutory schemes are in conflict with each other. Chianelli argues that he is "a legitimate businessperson engaged in retail sales to persons lawfully allowed to possess marijuana." Because of the conflicting statutes described above, Chianelli argues that the law provides no guidance how he can operate his business "without running afoul of the paraphernalia statute."

---

[7] For the reasons explained below, we need not today decide the applicability of Code § 18.2-265.3(A) to those selling or intending to sell drug paraphernalia to valid prescription holders because doing so would constitute an improper advisory opinion. See Commonwealth v. Harley, 256 Va. 216, 220, 504 S.E.2d 852, 854 (1998) (stating that courts may not render advisory opinions "'to answer inquires that are merely speculative'" (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964))).

Chianelli concedes that in order to raise a facial attack, he must first meet the standing requirement that the statute be unconstitutional as-applied to his own conduct. Chianelli is correct that a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian Law Project, 561 U.S. 1, 18-19 (2010) (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982)). We must "'therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" Commonwealth v. Hicks, 267 Va. 573, 580-81, 596 S.E.2d 74, 78 (2004) (quoting Hoffman Estates, 455 U.S. at 494-95).

In order to determine whether the statute is unconstitutional as applied to Chianelli's conduct, we must identify what conduct is at issue. Code § 18.2-265.3(A) makes it a misdemeanor crime for an individual to sell *or* possess with the intent to sell drug paraphernalia. In this case, it is unclear from the record whether Chianelli's conviction was based on the *sale* of paraphernalia or the *possession with intent to sell* drug paraphernalia.[8] However, under either scenario, the statute is constitutional as-applied to Chianelli's conduct.

If Chianelli's conviction is based solely on an individual sale to the undercover detectives, that conduct is clearly proscribed conduct because there is no evidence in the record that Chianelli meets the definition of any of those who are immunized from prosecution by the

---

[8] For example: the summons cites the statute and is labeled "selling narcotic paraphernalia;" the Commonwealth filed notice with the district court that it would be prosecuting Chianelli for the misdemeanor "Possess Drug Paraphernalia w/intent to Sell;" the circuit court's written memorandum opinion appears to only focus on the intent to sell portion of the paraphernalia statute and even notes that Chianelli's shop "was filled with items that are clearly within the definition of 'drug paraphernalia,' which he intended to sell in violation of Code § 18.2-265.3;" when Chianelli entered in conditional guilty plea the court stated that they were there "on one charge of selling narcotic paraphernalia in violation of Code § 18.2-265.3;" immediately after Chianelli entered that plea the court ruled that the seized paraphernalia, including all of the unsold items seized from the store, were to be destroyed pursuant to Code § 19.2-386.23 pending appeal; and lastly the circuit court's final sentencing order cites the statute and the charge as "DRUG PARAPHERNALIA: SELL/POSSESS TO SELL."

- 13 -

provisions of Code § 18.2-251.1 or even that the detectives presented a medical marijuana prescription. Therefore, Code § 18.2-265.3(A) is clearly constitutional as-applied to Chianelli's sale of narcotics paraphernalia to the undercover detectives. See MacDonald, 48 Va. App. at 332, 630 S.E.2d at 758 (concluding that the appellant's as-applied challenge failed because application of the statute to his conduct had no adverse impact on his personal due process rights).

If Chianelli's conviction is based on possession with intent to sell drug paraphernalia, Code § 18.2-265.3(A) is also constitutional as-applied to Chianelli's conduct because there is ample evidence in the record that he possessed items that *per se* constituted drug paraphernalia under the holding of Morrison and did so with intent to sell to non-prescription holders—conduct that is clearly prohibited by Code § 18.2-265.3(A) and not immunized by Code § 18.2-251.1. See, e.g., Hoffman Estates, 455 U.S. at 500 (holding that the appellant's as-applied vagueness challenge failed because "at least some of the items sold" were proscribed by the statute); see also Boyd v. Cnty. of Henrico, 42 Va. App. 495, 519, 592 S.E.2d 768, 780 (2004) (en banc) (stating that one who engages in "some conduct that is clearly proscribed cannot complain of the vagueness of the law"). Moreover, the record is clear that Chianelli acknowledged his conduct was illegal in Virginia.

Chianelli sold items that are intended to conceal marijuana and drug paraphernalia, and digital scales designed to look like innocuous items. When he told the detectives that the paraphernalia was for tobacco use only and they asked if that's how he "got around it," he responded that you "just have to be discreet about it" and that things were "a little lax now." He also stated that although he knew smoking marijuana was illegal in Virginia, things appeared to be "becoming more accepted in this county." He acknowledged that people came into his store to buy paraphernalia for the purposes of smoking marijuana. Although he stated he sold to

people with "legitimate medical problems" who "don't like prescription medications," he never suggested that he required them to produce a medical marijuana prescription. The record is devoid of evidence that would suggest Chianelli had any intention to sell paraphernalia to medical marijuana prescription holders. The store was littered in signs that said that the products were intended for tobacco use only. He testified on the stand that he intended to sell the paraphernalia for tobacco use only, not for marijuana consumption. Chianelli's repeated insistence that he intended to sell the items for tobacco use only demonstrates that he was well aware that selling drug paraphernalia for marijuana consumption was illegal. He never suggested that he only intended to sell items to individuals with medical marijuana prescriptions.

Therefore, Code § 18.2-265.3(A) is constitutional as-applied to Chianelli's conduct because there is ample evidence in the record that he possessed drug paraphernalia with intent to sell to non-prescription holders—conduct that is clearly prohibited by the statute. Because the statute is not unconstitutionally vague as-applied to Chianelli's conduct, we cannot engage in a facial analysis of a purely hypothetical conflict between the paraphernalia statute and the medical marijuana statute. See Turner v. Jackson, 14 Va. App. 423, 433, 417 S.E.2d 881, 888 (1992).

III. CONCLUSION

For the reasons stated above, Code § 18.2-265.3(A) is not unconstitutionally vague as-applied to Chianelli's conduct, and accordingly, we affirm his conviction.

Affirmed.