PRESENT: All the Justices

CRAIG E. BAUMANN

v. Record No. 191723

VIRGINIA STATE BAR

OPINION BY
JUSTICE TERESA M. CHAFIN
JULY 30, 2020

FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

In this appeal of right, Craig E. Baumann challenges a decision of the Virginia State Bar Disciplinary Board. Upon review, we find no error in the Board's decision.

I. BACKGROUND

Baumann has been licensed to practice law in Virginia since 1978. He has practiced law in Northern Virginia for approximately 40 years. As a self-described "general practitioner," Baumann does not specialize in any particular field of the law.

On July 9, 2015, Ella Wright visited Baumann's office to obtain legal advice regarding her late husband's trust. Earlier that day, Wright received a letter from H. Kay Cross, an attorney who represented her stepchildren. The letter demanded a copy of the late husband's trust agreement. It also demanded for Wright to provide an "accounting of the property, liabilities, and receipts of the [t]rust" by April 15, 2016. Additionally, the letter demanded that Wright give certain items of personal property to the stepchildren.

Although a copy of the trust agreement was not included in the record of this case, the letter referred to the trust as the "Richard H. and Ella Louise Wright Revocable Trust." Testimony established that Wright was the sole beneficiary of the trust. However, the trust agreement specified that Wright's stepson was entitled to receive a shotgun and an antique "bishop's chair" that had belonged to his father. While Wright's stepchildren were named as

contingent beneficiaries of the trust, the trust agreement gave Wright the power to revoke or terminate the trust at any time.

Wright testified that she considered the trust agreement to be a "private document." Therefore, she did not want to give a copy of the trust agreement to the stepchildren. Wright also did not want to provide an accounting of the trust's assets and liabilities. Wright was amenable to giving certain items of her husband's personal property to the stepchildren, but she wanted to avoid any direct communication with them due to their strained relationship.

Wright gave Baumann a copy of Cross's letter and the trust agreement and asked if he could resolve the dispute. Baumann agreed to represent Wright for a $7,500 "flat" fee. In the event that the case went to court, Wright was required to pay Baumann an additional $15,000 advanced fee. Baumann would then bill Wright at an hourly rate of $325 for any services he provided during the course of the litigation.

Wright agreed to this arrangement, and she signed a fee agreement that reflected its terms. Notably, the fee agreement stated that the $7,500 flat fee was "nonrefundable" and "earned upon the acceptance of representation." Wright paid Baumann $7,500 on the day of their initial consultation, and Baumann deposited the money into his trust account.

Baumann testified that he performed 10 to 12 hours of research on the weekend following his initial consultation with Wright. Baumann, however, did not keep any records documenting the time that he spent working on Wright's case. Baumann also did not take any notes pertaining to his research. He also failed to print, copy, or otherwise save any research materials.

Baumann contacted Cross to discuss the trust at issue on July 13, 2015. He faxed a copy of the trust agreement to Cross three days later. In September of 2015, Baumann and Cross exchanged emails to coordinate times for the stepchildren to pick up items of their father's

2

personal property from Wright's home. Baumann and Cross exchanged similar emails in August of 2016. While Baumann facilitated the transfer of personal property between Wright and the stepchildren, he never addressed Cross' pending demand for an accounting of the trust assets.

Wright sent an email to Baumann on August 29, 2016. In the email, Wright told Baumann that the stepchildren had picked up all of the items at issue from her home. She then terminated the representation and requested a statement describing the services that Baumann rendered and any expenses that he incurred. At this time, Baumann did not inform Wright that the accounting issue was still unresolved.

On September 12, 2016, Baumann gave Wright a document entitled "Professional Services Rendered." In that document, Baumann alleged that he had: (1) read a 179-page trust document, performed legal research, and advised Wright "concerning the same," (2) contacted various parties "as needed"; (3) guaranteed his availability to Wright instead of the opposing party, (4) prepared the matter for litigation, and (5) closed Wright's file. The statement claimed that Baumann earned the entire $7,500 fee.

On September 15, 2016, Cross emailed Bauman and renewed the stepchildren's request for an accounting of the trust assets and liabilities. Baumann forwarded Cross' email and the attached letter to Wright, explaining simply that "[t]his came in by email today." Wright then hired Richard Dezio, another attorney, to resolve the accounting issue.

Dezio specialized in the field of trusts and estates. Dezio testified that the trust agreement consisted of 38 pages rather than 179 pages. After reviewing the trust agreement, Dezio concluded that Wright was not obligated to provide an accounting to the stepchildren because they were not "qualified beneficiaries" under Virginia law. Dezio also determined that Wright could avoid any potential duty to provide an accounting to the stepchildren by revoking

3

the trust. Dezio resolved the accounting issue with one phone call to Cross, and Wright never had to provide an accounting to the stepchildren.

Before he resolved the accounting issue, Dezio contacted Baumann and requested copies of Wright's file, Baumann's notes and research, and any materials that Baumann prepared in anticipation of litigation. Baumann did not respond to Dezio's initial request. When Dezio renewed his request two weeks later, Baumann provided Dezio with copies of the correspondence and emails that he sent to Cross. He also provided four pages of sparse, handwritten notes.[1] Baumann never provided any additional notes or substantive legal research to Dezio.

Upon reviewing the provided materials, Dezio concluded that Bauman had not performed the professional services that he claimed to have provided to Wright. Therefore, Dezio requested that Baumann refund at least a portion of the $7,500 fee. Baumann refused to do so, claiming that he had accomplished all of the objectives of the representation.

Wright filed a bar complaint against Baumann on February 2, 2017. After conducting a preliminary investigation, the Virginia State Bar charged Baumann with misconduct. The Bar informed Baumann that private discipline was available if he agreed to resolve the matter within 21 days. The Bar explained that the matter would be placed on its public hearing docket after that time period expired, and that any subsequent discipline would be a matter of public record.

Baumann contested the charge of misconduct. Although the Bar offered a private reprimand to Baumann, he refused to stipulate to certain facts. Therefore, the matter was placed

---

[1] While these notes referenced three statutes, they did not provide any substantive legal analysis.

4

on the Bar's public hearing docket. A District Committee of the Virginia State Bar Disciplinary Board held a hearing regarding the matter on December 5, 2018.

At the hearing, Wright testified that she only met with Baumann once during the course of the representation. Wright also testified that Baumann never provided any legal advice concerning the trust at issue. Wright explained that she never authorized Baumann to provide a copy of the trust agreement to the stepchildren, and that she only learned that he had done so when Cross renewed her request for an accounting on September 15, 2016.

Cross testified that Baumann never addressed her request for an accounting. She also testified that she never intended to pursue litigation. Cross confirmed that the stepchildren decided to withdraw their request for an accounting following her conversation with Dezio.

Baumann testified that he met with Wright on three or four occasions. Baumann claimed that he informed Wright that she had a legal duty to provide a copy of the trust agreement to the stepchildren. He also testified that he purposefully chose not to respond to Cross' request for an accounting as part of a broader legal "strategy." Baumann explained that he believed that Cross would withdraw her demand if he ignored the issue. Baumann also testified that the $7,500 fee was refundable.

At the conclusion of the hearing, the District Committee determined that Baumann violated the Virginia Rules of Professional Conduct. Specifically, the Committee determined that Baumann violated Rule 1.2(a) by failing to accomplish the objectives of the representation, Rule 1.4(a)–(c) by failing to adequately communicate with Wright, and Rule 1.5(a) by charging an unreasonable fee. The Committee imposed a public admonition with terms that required Baumann to return $5,000 to Wright and complete an additional eight hours of continuing legal education in ethics.

Baumann appealed the District Committee's determination to the Virginia State Bar Disciplinary Board. The Board unanimously affirmed the Committee's decision. This appeal followed.

## II. ANALYSIS

On appeal, Baumann argues that the Board applied an incorrect legal standard when it affirmed the Committee's decision. Baumann also contends that the disciplinary system is unconstitutional. Additionally, Bauman maintains that the Committee's "findings of fact" and the evidence in the record failed to establish that he violated any disciplinary rules. Baumann's arguments are without merit.

### A. THE BOARD APPLIED THE PROPER LEGAL STANDARD

Baumann maintains that the Board applied the wrong standard of review when it determined whether "substantial evidence" supported the Committee's decision. Baumann contends that the Board's review of the Committee's decision should have focused on the Committee's "findings of fact." Essentially, Baumann argues that the Board could only consider the Committee's written factual findings when assessing the Committee's decision on appeal.

The interpretation of disciplinary rules is subject to de novo review. *See Roberts v. Virginia State Bar*, 296 Va. 105, 115 (2018). Applying this standard, we conclude that Baumann's argument conflicts with the plain language of the relevant disciplinary rules.

The "Procedure for Disciplining, Suspending, and Disbarring Attorneys" is addressed in Part 6, Section IV, Paragraph 13 of the Rules of the Supreme Court. Pursuant to Part 6, Section IV, Paragraph 13-7(A)(2), a District Committee has the power to "[c]onduct hearings and adjudicate Charges of Misconduct." "The burden of proof in all Disciplinary Proceedings . . . is clear and convincing evidence." Va. Sup. Ct. R., Part 6, § IV, ¶ 13-1.1.

6

Part 6, Section IV, Paragraph 13-16(Y) requires a District Committee to issue a written "Determination" when it concludes that an attorney has engaged in misconduct. The Determination must include: "(1) [b]rief findings of the facts established by the evidence . . .; (2) [t]he nature of the Misconduct shown by the facts so established, including the Disciplinary Rules violated by the Respondent; and (3) [t]he sanctions imposed, if any, by the District Committee." Va. Sup. Ct. R., Part 6, § IV, ¶ 13-16(Y).

Pursuant to Part 6, Section IV, Paragraph 13-17, a District Committee Determination may be appealed to the Disciplinary Board of the Virginia State Bar. Part 6, Section IV, Paragraph 13-19(E) sets forth the standard of review to be applied in these appeals. That Paragraph states, "In reviewing a District Committee Determination, the Board shall ascertain whether there is substantial evidence in the record upon which the District Committee could reasonably have found as it did." Va. Sup. Ct. R., Part 6, § IV, ¶ 13-19(E).

Under the plain language of Part 6, Section IV, Paragraph 13-19(E), the Board was required to review the record to determine whether the District Committee's decision was supported by "substantial evidence." We previously recognized this conclusion in *Kuchinsky v. Virginia State Bar*, 287 Va. 491 (2014). While *Kuchinsky* involved an appeal from a panel of three circuit court judges, it addressed an identical standard of review. *See id.* at 501.

The appellant in *Kuchinsky* made an argument on appeal that was similar to Baumann's argument in the present case. *See id.* The Court rejected the appellant's argument, explaining that

> [a] three-judge panel appointed pursuant to Code § 54.1-3935 reviews a District Committee determination to determine "whether there is substantial evidence *in the record* upon which the District Committee could reasonably have found as it did." Va. Sup. Ct. R., Part 6, § IV, ¶ 13-19(E) (emphasis added). Thus, in addition to the District Committee's findings of fact, a three-judge panel has

7

the benefit of considering the entire record in reviewing a District Committee's Determination.

*Id.*

Pursuant to the plain language of Part 6, Section IV, Paragraph 13-19(E) and the holding in *Kuchinsky*, the Board applied the correct legal standard in this case. The Board was required to review the entire record in order to determine whether "substantial evidence" supported the Committee's decision. The Board's review was not limited to the written "findings of fact" included in the Committee's Determination.

## B. THE CHALLENGED PROVISIONS OF THE DISCIPLINARY SYSTEM ARE NOT UNCONSTITUTIONAL

Baumann maintains that the procedures set forth in Part 6, Section IV, Paragraph 13-16 and related provisions of the Rules of the Supreme Court violate his constitutional rights to due process. We disagree.

Baumann's argument is based on the availability of private discipline. Citing Part 6, Section IV, Paragraphs 13-15(B)(4) and 13-16(X), Baumann observes that private discipline is only available when an attorney agrees to receive a reprimand or admonition before his or her disciplinary matter is placed on the Board's public hearing docket. Baumann notes that an attorney cannot receive private discipline if he or she elects to contest a charge of misconduct.

As private discipline allows an attorney to avoid the harsher penalty of public censure, Baumann claims that attorneys are often "needlessly coerce[d] . . . into forgoing a hearing on the merits and plead[ing] guilty in order to receive a private reprimand." Thus, Baumann contends that the disciplinary system impermissibly discourages attorneys from contesting charges of misconduct.

8

The Supreme Court of the United States has held that attorneys facing disbarment are "entitled to procedural due process, which includes fair notice of the charge" of misconduct asserted against them. *In re Ruffalo*, 390 U.S. 544, 550 (1968). Nonetheless, an attorney's due process rights are somewhat limited in the context of disciplinary proceedings.

A proceeding to discipline an attorney is a civil proceeding. *Moseley v. Virginia State Bar*, 280 Va. 1, 3 (2010). "The primary purpose of such disciplinary proceedings is to protect the public, not punish the attorney." *Id.* "To that end, 'it is only necessary that the attorney be informed of the nature of the charge preferred against him and be given an opportunity to answer.'" *Id.* (quoting *Virginia State Bar v. Gunter*, 212 Va. 278, 284 (1971)); *see also Ruffalo*, 390 U.S. at 550 ("[N]otice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence." (quoting *Randall v. Brigham*, 74 U.S. 523, 540 (1868))).

"A Disciplinary Rule 'is presumed to be constitutional, and we will resolve any doubt regarding its constitutionality in favor of its validity.'" *Roberts*, 296 Va. at 123 (quoting *Motley v. Virginia State Bar*, 260 Va. 243, 247 (2000)). We have previously explained that "[t]he procedures outlined in Part Six [of the Rules of the Supreme Court] provide the notice and hearing provisions for disciplinary proceedings. These provisions ensure the integrity of the disciplinary process and protect the rights of the attorney." *Pappas v. Virginia State Bar*, 271 Va. 580, 587 (2006).

In the present case, Baumann was entitled to receive notice of the disciplinary charges asserted against him and an opportunity to defend himself. He received both, and he participated extensively in proceedings before the District Committee and the Disciplinary Board. Despite

9

Baumann's argument on appeal, he simply did not have any further constitutional due process rights that entitled him to receive private discipline.

Baumann's reliance on *United States v. Jackson*, 390 U.S. 570 (1968), is misplaced. *Jackson* addressed the constitutionality of a federal criminal statute (i.e., the Federal Kidnapping Act). *See Jackson*, 390 U.S. at 570. The statute at issue allowed juries to impose capital punishment. *Id.* at 571. Capital punishment, however, was not available if a defendant waived his or her right to a jury trial or pled guilty to the underlying offense. *Id.*

The Supreme Court concluded that parts of the statute were unconstitutional. *Id.* at 572. The Court observed that the provisions of the statute addressing the availability of capital punishment "discourage[d the] assertion of the Fifth Amendment right not to plead guilty and . . . deter[red the] exercise of the Sixth Amendment right to demand a jury trial." *Id.* at 581 (footnote omitted). Accordingly, the Court determined that the capital punishment provisions of the statute imposed "an impermissible burden upon the exercise of a constitutional right." *Id.* at 572.

*Jackson* is easily distinguished from the present case. Unlike the present case, *Jackson* involved a criminal proceeding. In contrast, the present case involves a civil proceeding. As previously explained, due process rights are more limited in civil proceedings that are brought to discipline an attorney. *See Moseley*, 280 Va. at 3. Moreover, *Jackson* involved capital punishment, a penalty that is "unique in its severity and irrevocability." *Corbitt v. New Jersey*, 439 U.S. 212, 217 (1978) (quoting *Gregg v. Georgia*, 428 U.S. 153, 187 (1976)). In contrast, the present case involves a public admonition.

Furthermore, the limitation placed on the right to receive private discipline is necessary and justified by the overall disciplinary scheme. In *Jackson*, the Supreme Court explained that the capital punishment provisions of the statute there at issue "*needlessly* chill[ed] the exercise of

10

basic constitutional rights." *Jackson*, 390 U.S. at 582 (emphasis added). The Court further explained that the provisions at issue were "unnecessary and therefore excessive." *Id.*

Unlike the statute at issue in *Jackson*, the disciplinary rules at issue in the present case do not "needlessly" chill an attorney's ability to exercise his or her right to a hearing. Disciplinary hearings are generally open to the public.[2] *See* Va. Sup. Ct. R., Part 6, § IV, ¶ 13-16(G). Legitimate policy interests are served by the imposition of public sanctions following a public hearing. Public sanctions inform the public, promote transparency, and demonstrate that the Bar consistently penalizes attorney misconduct.

For these reasons, we conclude that the provisions limiting the availability of private discipline are constitutional. Baumann does not have a constitutional right to receive private discipline following a public disciplinary hearing. The disciplinary rules at issue do not needlessly chill the exercise of any constitutional right. Rather, they promote legitimate policy interests and strengthen the integrity of the legal profession.

C. SUBSTANTIAL EVIDENCE IN THE RECORD ESTABLISHED THAT BAUMANN VIOLATED THE VIRGINIA RULES OF PROFESSIONAL CONDUCT

In addition to his procedural and constitutional arguments, Baumann challenges the sufficiency of the "findings of fact" and evidence supporting the Board's decision.

> The standard of review we employ in reviewing a matter of attorney discipline is familiar and well-settled:
>
> "We conduct an independent examination of the entire record. We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party [below]. We accord the [Board's] factual findings substantial weight and view those findings as prima facie correct. Although we do not give the [Board's] conclusions the weight of a

---

[2] Impairment hearings are not open to the public. *See* Va. S. Ct. R., Part 6, § IV, ¶¶ 13-23(F) and 13-30(A)(3). Disciplinary hearings may also be closed to the public upon a showing of "good cause." *See* Va. S. Ct. R., Part 6, § IV, ¶ 13-30(A)(8).

jury verdict, we will sustain those conclusions unless it appears
that they are not justified by a reasonable view of the evidence or
are contrary to law."

*Pappas*, 271 Va. at 585-86 (quoting *Anthony v. Virginia State Bar*, 270 Va. 601, 608-09 (2005)).

Upon reviewing the present case under these established legal standards, we conclude

that the Board did not err when it determined that Baumann violated Rules 1.2, 1.4, and 1.5 of

the Virginia Rules of Professional Conduct.

1.  THE RULE 1.2 VIOLATION

Rule 1.2 of the Virginia Rules of Professional Conduct addresses the "Scope of

Representation." The Board determined that Baumann's conduct violated Rule 1.2(a). In

pertinent part, Rule 1.2(a) states that "[a] lawyer shall abide by a client's decisions concerning

the objectives of representation . . . and shall consult with the client as to the means by which

they are to be pursued."

Adopting the Committee's written "findings of fact,"[3] the Board concluded that Baumann

violated Rule 1.2(a) in two primary ways. The Board determined that Baumann failed to "act in

accordance with" the objectives of the representation. The Board also determined that Baumann

failed to properly consult with Wright regarding the means by which the objectives of the

representation would be accomplished. Upon review, we conclude that the Board's conclusions

and the Committee's "findings of fact" were supported by ample evidence in the record.

As correctly noted by the Committee,

> [t]he scope of the representation included not only the
> stepchildren's demand for return of certain personal property
> belonging to their father but also the issues of whether or not they
> were 'qualified beneficiaries' under the Richard Wright Trust and

---

[3] The Board adopted the Committee's factual findings after reviewing the entire record, expressly noting that "[t]he testimony of the witnesses along with the exhibits of the parties, provided a substantial evidentiary basis for the factual findings made by the District Committee."

12

thus entitled to receive a copy of the trust . . . and periodic accountings.

While Baumann facilitated the exchange of certain items of personal property, he did not resolve the accounting issue. The record unequivocally established that Wright hired Dezio to resolve this issue after Baumann failed to do so. Furthermore, the record established that Baumann provided a copy of the trust agreement to the stepchildren against Wright's wishes without obtaining her authorization to do so.

The record also established that Baumann did not consult with Wright regarding the means by which the objectives of the representation would be accomplished. Baumann did not consult with Wright regarding his "strategy" to ignore Cross' request for an accounting of the trust assets and liabilities. Baumann also did not consult with Wright regarding her legal obligation to provide a copy of the trust agreement to the stepchildren. In fact, Wright testified that Baumann never provided any legal advice regarding the trust.

Under these circumstances, we conclude that the Board did not err when it determined that Baumann violated Rule 1.2(a) of the Virginia Rules of Professional Conduct.

## 2. THE RULE 1.4 VIOLATION

Rule 1.4 of the Virginia Rules of Professional Conduct addresses "Communication." The Committee determined that Baumann's conduct violated Rule 1.4(a), (b), and (c). Although the Board affirmed the Committee's decision, the Board's memorandum order only expressly referenced a violation of Rule 1.4(a).[4] The Board's analysis, however, indirectly addressed the requirements of each subsection of Rule 1.4.

---

[4] The Board's summary order merely affirmed the Committee's decision without referencing the specific disciplinary rules that Baumann violated. When the Board announced its decision at the conclusion of the hearing held on September 27, 2019, the Board generally affirmed the Committee's decision regarding the "Rule 1.4 violation."

In its entirety, Rule 1.4 states

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

> (c) A lawyer shall inform the client of facts pertinent to the matter and of communications from another party that may significantly affect settlement or resolution of the matter.

Based on the Committee's "findings of fact" and its own review of the record, the Board concluded that Baumann did not adequately communicate with Wright during the course of the representation. The record contains substantial evidence supporting the Board's decision and the Committee's factual findings pertaining to this issue.

Although Wright and Baumann exchanged emails regarding certain items of personal property,[5] Wright testified that she only met with Baumann once during the course of the representation. Wright testified that Baumman did not provide any legal advice regarding the trust. Specifically, Baumann and Wright never discussed whether she was legally obligated to provide a copy of the trust agreement or an accounting of the trust's assets and liabilities to the stepchildren. Baumann also did not advise Wright of the results of the legal research that he allegedly performed. Additionally, Baumann did not discuss with Wright the communications that he received from Cross, or tell Wright that he had provided a copy of the trust agreement to Cross.

---

[5] Based on the emails between Baumann and Wright and the testimony presented at the December 5, 2018, hearing, the Committee concluded that "there was no contact between [Baumann] and [Wright] from September, 2015, to August, 2016."

14

We conclude that the Board did not err when it determined that Baumann violated Rule 1.4 by failing to adequately communicate with Wright.

### 3. THE RULE 1.5 VIOLATION

Rule 1.5 of the Virginia Rules of Professional Conduct addresses "Fees." The Board determined that Baumann's conduct violated Rule 1.5(a). Rule 1.5(a) states that "[a] lawyer's fee shall be reasonable," and it provides the following factors to consider when evaluating the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Based primarily on the Committee's "findings of fact," the Board determined that Baumann violated Rule 1.5(a) by charging Wright an unreasonable fee. Again, substantial evidence in the record supports the Board's decision and the Committee's factual findings.

15

The Committee determined that Baumann's fee was unreasonable after considering the factors provided in Rule 1.5(a). The Committee explained that "the matters for which [Wright] retained [Baumann] were not complicated or complex and were resolved by Mr. Dezio quickly and with a single phone call to Ms. Cross." The Committee also noted that Baumann was a "general practitioner" who did not "specialize in trust and estate matters."

Perhaps more importantly, the Committee concluded that "the only result obtained in this case was the transfer of personal property, that the issues of greatest importance to [Wright] were never resolved by [Baumann], and . . . that [Baumann] never attempted to resolve these issues." While the Committee acknowledged that Baumann claimed to have performed some legal research during the course of the representation, the Committee noted that Wright "never received the benefit" of this legal research. Under these circumstances, the Committee determined that "even under a quantum meruit analysis, the fee [Baumann] charged was not reasonable."

The Committee's "findings of fact" and legal conclusions were supported by substantial evidence in the record. Dezio's testimony established that the representation at issue did not involve a complicated legal matter. As noted by the Committee, Dezio explained that he resolved the accounting issue with one phone call to Cross after conducting basic legal research. Nevertheless, Baumann charged Wright a $7,500 flat fee to resolve the issues presented, and he anticipated charging her an additional $15,000 if the matter was contested in court. Although Baumann was not a specialist in the field of trusts and estates, his fee significantly exceeded the fees charged by the other attorneys involved in this case.[6]

---

[6] Cross charged the stepchildren $1,100 for the services that she provided concerning the trust. Dezio, a specialist, charged Wright $4,000 to resolve the accounting issue and pursue a refund from Baumann.

16

Moreover, the record clearly established that Baumann did not resolve the objectives of the representation. Baumann provided a copy of the trust to Cross and the stepchildren against Wright's wishes, and he never addressed the accounting issue. Thus, it appears that Baumann's fee was based, at least in part, on work that he never performed. *See* Va. Legal Ethics Op. 1606 (approved by this Court on November 2, 2016) ("A fee that is not earned is per se an unreasonable fee.").[7]

Under the present circumstances, Baumann's fee was not justified by "the time and labor required" to resolve the underlying legal matter or the "results obtained" by the representation. *See* Va. S. Ct. R., Part 6, § II, ¶ 1.5(a)(1) and (4). The Board was well within its discretion to conclude that Baumann's cursory statement of "Professional Services Rendered" did not establish that the charged fee was reasonable. *See Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 837 S.E.2d 504, 516 n.6 (2020) (observing that "any . . . fee a lawyer earns when representing a client[] must be reasonable" and that "records establishing the time expended and costs incurred [in the representation] can be relevant to show that [a] fee is reasonable"); *Tazewell Oil Co. v. United Virginia Bank*, 243 Va. 94, 111 (1992) (finding that "almost 300 pages of contemporaneous time records detailing the activities for which [attorney's] fees were sought," coupled with unrefuted "affidavits of its attorneys upon the reasonableness of the hourly rates charged and the accuracy of the time billed," provided "ample support" for an award of attorney's fees in the amount sought by the claimant).

---

[7] It is worth noting that the Board allowed Baumann to keep $2,500 of his fee. This portion of the fee presumably compensated Baumann for the legal services that he actually performed during the course of the representation, including his efforts to facilitate the exchange of personal property between Wright and the stepchildren.

17

As substantial evidence in the record supported the Board's conclusion that Baumann charged an unreasonable fee, we conclude that the Board did not err when it determined that Baumann violated Rule 1.5(a).

## III.  CONCLUSION

In summary, we conclude that the Board applied the correct legal standard when it reviewed the Committee's decision.  We also conclude that the challenged provisions of the disciplinary system are not unconstitutional.  We further conclude that substantial evidence in the record supported the Board's determination that Baumann violated Rules 1.2, 1.4, and 1.5 of the Virginia Rules of Professional Conduct.  For these reasons, we affirm the order of the Board.

*Affirmed.*